<em>Decree affirmed.</em>

---

The People *ex rel.* Samuel T. Mayo

*v.*

Charles E. Lippincott, Auditor, etc.

1. Municipal bonds—*registration under act of* 1865. The first section of the act of February 13, 1865, relating to municipal bonds, limits the operation of that act to debts created previous to its passage, so that the

13—81st Ill.

provision for the registration, etc., of bonds which it contains has no application to bonds issued on indebtedness created after the passage of the act.

2. SAME—*acts of* 1872 *and* 1875 *construed.* The acts of 1872 and 1875 relating to municipal indebtedness, and re-funding the same, are not simply amendatory of the act of 1865, but were enacted for different purposes, to be accomplished by different means, and each, for its own purpose, is still in force.

3. Municipal bonds issued to fund prior indebtedness created since February 13, 1865, are not subject to registration in the Auditor's office under the act of 1865.

4. SAME—*remedy for collection not lost by re-funding.* Where municipal corporations, already having the power to contract debts, and levy and collect taxes for their payment, are authorized to fund such indebtedness and issue new bonds therefor, the same remedy will exist to enforce their payment, as of the old ones, where no provision is made in the law by which the funding is made as to the means by which collection may be had.

This is a petition for *mandamus* to compel the Auditor of Public Accounts to register a certain new bond issued by Macoupin county, in lieu of a prior indebtedness incurred before March 26, 1872, and since February 13, 1865, and which remained outstanding as a subsisting legal obligation against said county from the 26th day of March, 1872, until re-funded on the —— day of December, 1875, into the new bond presented to the Auditor for registration.

February 13, 1865, the General Assembly passed "An act relating to county and city debts, and to provide for the payment thereof by taxation in such counties and cities," the first section of which reads as follows:

"SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* In all cases where counties or cities have heretofore, under any law of this State, issued. bonds or securities for money on account of any subscription to the capital stock of any railroad company, or on account of, or in aid of, any public improvement, and the same remain outstanding, or any debt arising thereout remains unpaid, the board of supervisors or county court of such county, and the city council or municipal authority of such city, as the case may be, having issued such bonds or securities, may, upon due surrender of any such bonds or securities, or cancellation

of such debt, issue in place thereof to the holder or owner new bonds, in such form, for such amount, upon such time, and drawing such interest, as may be agreed upon with the holder or owner: *Provided,* such new bonds shall not be for a greater sum than the principal and accrued or earned interest unpaid of the bonds or debts in place of which they shall be given, nor bear a greater rate of interest than six per cent per annum, payable on the first day of July in each year; and such bonds shall show, on their face, that they are issued under this act, and, if so agreed, may provide for payment of five per cent of the principal thereof, annually, until fully paid."

Section 2 of said act declares, "on presentation of any such new bond at the office of the Auditor of Public Accounts for registration, he shall cause the same to be registered in his office," etc.

Other sections of the act provide for the collection, with the State revenue, of the necessary tax to pay the principal and interest of the registered bonds, and prescribe the Auditor's duty in that respect.   Rev. Stat. 1874, p. 789.

March 26, 1872, the following act was passed:

"An act to enable counties, cities, townships, school districts and other municipal corporations, to take up and cancel outstanding bonds and other evidences of indebtedness, and fund the same."   Approved and in force March 26, 1872.   Laws 1871–2, p. 202.

"SECTION 1. · *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That, in all cases where any county, city, township, school district or other municipal corporation, have issued bonds or other evidences of indebtedness for money, on account of any subscription to the capital stock of any railroad company, or on account of or in aid of any public improvement, or for any other purposes, which are now binding or subsisting legal obligations against any such county, city, township, school district or other municipal corporations, and remaining outstanding, and which were properly authorized by law, the proper authorities of any such county, city, township, school district or other municipal cor-

porations may, upon the surrender of any such bonds or other evidences of indebtedness, or any number thereof, issue in place or in lieu thereof, to the holders or owners of the same, new bonds or other evidences of indebtedness, in such form, for such amount, upon such time, not exceeding the term of twenty years, and drawing such rate of interest as may be agreed upon with such holders or owners: *Provided*, such new bonds or other evidences of indebtedness shall not be for a greater sum than the principal sum or sums named in such original bonds or other evidences of indebtedness, nor bear a greater rate of interest than the rate represented in the original bonds or other evidences of indebtedness; and such bonds or other evidences of indebtedness, so issued, shall show, on their face, that they were issued under this act: *And be it further provided*, that the issue of such new bonds in lieu of such indebtedness shall be authorized by a vote of a majority of the legal voters of such county, city, township, school district or other municipal corporation, voting either at some annual or special election of such municipal corporation."

April 14, 1875, the following act was passed: "An act to amend an act entitled 'An act to enable counties, cities, townships, school districts or other municipal corporations to take up and cancel outstanding bonds and other evidences of indebtedness, and fund the same,'" approved and in force March 26, 1872.

" SECTION 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly,* That section 1 of the aforesaid act be amended so as to read as follows:

" Sec. 1. That in all cases where any county, city, town, township, school district or other municipal corporation, have issued bonds or other evidences of indebtedness for money, on account of any subscription to the capital stock of any railroad company, or on account of, or in aid of any public buildings or other public improvement, or for any other purposes, which are now binding or subsisting legal obligations against any county, city, town, township, school district or other municipal corporations, and remaining outstanding, and which

are properly authorized by law. the proper authorities of any such county, city, town, township, school district or other municipal corporations may, upon the surrender of any such bonds or other evidences of indebtedness, or any number thereof. issue in place or in lieu thereof to the holders or owners of the same, new bonds or other evidences of indebtedness, in such form, for such amount, upon such time, not exceeding the term of twenty years, and drawing such rate of interest, *not exceeding ten per cent*, as may be agreed upon with such holders or owners; and such new bonds or other evidences of indebtedness, so issued, shall show on their face that they are issued under this act: *Provided*, that the issue of such new bonds, in lieu of such indebtedness, shall first be authorized by a vote of a majority of the legal voters of said county, city, township or other municipal corporation, voting either at some annual or special election of such municipal corporation: *And provided, further*, that such bonds or other evidences of indebtedness shall not be issued so as to increase the aggregate indebtedness of such municipal corporation beyond five per centum on the value of the taxable property therein—to be ascertained by the last assessment for State and county taxes, prior to the issuing of such bonds or other evidences of indebtedness. Nothing contained in this act, or in the act to which this is an amendment, shall be held to repeal or in anywise affect the power of the city of Chicago to issue new bonds to an amount sufficient to retire and satisfy maturing bonds of said city, conferred by section 38 of an act of the General Assembly. approved February 13. 1863, amending the charter of said city." Session Laws 1875, p. 68.

The petition is demurred to.

Mr. LYMAN TRUMBULL, for the relator.

Mr. JAMES K. EDSALL, Attorney General, and Messrs. JOHN M. & JOHN MAYO PALMER, for the respondent.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

The petition shows that the new bond of the relator was issued in lieu of old bonds in strict conformity to the act of

1875, and that it was duly presented to the Auditor of Public Accounts for registration under the act of 1865. The demurrer admits all these facts, and the only question presented for our consideration is, whether it was the duty of the Auditor, under the above statutes, being the only ones bearing upon the subject, to register the bond.

The Auditor's reason for his refusal to register the bond was, that, by reference to section 1 of the act of February 13, 1865, it would be seen that the act did not apply to debts created after its passage; that bonds issued to fund indebtedness created since February 13, 1865, were not subject to registration in his office under the act of February 13, 1865.

The first section of the act of February 13, 1865, by express terms, limits its operation to debts created previously to the passage of the act, so that the provision for the registration, etc., of bonds, which it contains, has no application, according to the provisions of the act, to bonds, like that in question, issued for indebtedness created subsequently to the passage of the act.

It is insisted, in behalf of the relator, that the first section of the act of 1865, which relates to the funding of outstanding indebtedness, was repealed by the act of March 26, 1872; that the object of said first section, and the act of 1872, is the same, to-wit: to enable counties, etc., to fund their maturing indebtedness; that the act of 1872 revises the subject matter, and covers all embraced in the first section of the act of 1865, and something more; that it is a substitute for and revision of that section, with certain extensions and limitations; that a subsequent act, which embraces the whole subject contained in a previous one, repeals it as effectually as if it said so in so many words, but that it is only such portions of the previous act as are covered by the subsequent one that are repealed; that all the other sections and provisions of the act of 1865, except the first, remain in full force, because neither the act of 1872, nor that of 1875 substituted for it, contain any provisions on the subject of the other sections relating to registration. In short, that the acts of 1865, 1872 and 1875, all

constitute one act on the same subject; that the first section of the act of 1865 is repealed, because repugnant to the acts of 1872 and 1875; that none of the other sections of the act of 1865 are repealed, because there is no repugnancy between them and the acts of 1872 and 1875, and that the law now stands as if the legislature had, at the time of the passage of the act of 1875, re-enacted all the sections of the act of 1865 except the first.

We do not perceive how the mere repeal of the first section of the act of February 13, 1865, would help the case of the relator. That would simply leave all the other sections of the act disjoined, and by themselves, without having any subject of registration upon which they could operate. But, to serve the need of the relator, the acts of 1872 and 1875 must, by implication, operate to amend the first section of the act of February 13, 1865, to the extent that the acts of 1872 and 1875 be made to take the place of that section as a part of that act, and in that way the provisions for the registration and collection of bonds provided by the second and subsequent sections of the act of 1865, be made to become applicable to bonds issued in pursuance of the acts of 1872 and 1875.

It is necessary to establish a connection between the acts of 1872 and 1875, and the act of February 13, 1865, in order to have the provision for registration of the bonds issued under the act of February 13, 1865, apply to bonds issued under the other acts. There exists no such connection by enactment of the legislature, or by any manifestation of its intention. The attempt is, to supply it by artificial construction. There are too great difficulties in the way. Amendments by implication, like repeals by like means, surely are not favored.

The acts of 1872 and 1875 contain no reference to the act of 1865. It would have been in accordance with the methods of legislative action, to have shown it by declaration, that the acts of 1872 and 1875 were intended as an amendment to the act of 1865, if such had been the purpose of the legislature.

The titles of the acts express different purposes, and, under

the present constitution, the titles of acts are not without importance.

The act of February 13, 1865, is entitled "An act relating to county and city debts, and to provide for .the payment thereof by taxation in such counties and cities." The act of 1872 is entitled "An act to enable counties, etc., to take up and cancel outstanding bonds and other evidences of indebtedness, and fund the same." The purpose of the latter, as expressed, being simply for funding indebtedness, while that of the former is for funding, and also for providing for payment by taxation.

The emergency clause, which we may consider expresses the immediate object of the legislature in the passage of the act of 1872, declares that, "Whereas, some counties, cities, townships and other municipal corporations in this State, have outstanding bonds and other evidences of indebtedness that will soon fall due, and are without any remedy for renewing or funding the same, therefore this act shall be in full force from and after its passage," indicating the purpose only to provide a remedy which did not before exist, to renew or fund outstanding indebtedness.

The act of 1865, with its provision for registration, etc., applies to only a comparatively small class of bonds, those issued by counties and cities prior to February 13, 1865. It authorized new bonds to be issued for the amount of principal and accrued interest, and the interest upon the new bonds was limited to six per centum per annum. That act, with its provisions for registration, etc., may well stand, for its own purposes, unaffected essentially by the acts of 1872 and 1875.

The acts of 1872 and 1875 do not refer to the act of 1865, nor need any of their provisions conflict materially with the act of 1865, or if they should, the only effect need be, to that extent, to modify that act in respect to that class of bonds to which it applies. While in some respects the language of the acts is alike, they refer to different subjects, and contemplate different objects.

The act of 1865 limited the right to fund, to counties and

cities. The acts of 1872 and 1875 not only embraced counties and cities, but "any county, city, town, township, school district or other municipal corporation." The act of 1865 was limited to funding indebtedness which had been created prior to its passage. The acts of 1872 and 1875 embraced all outstanding subsisting indebtedness at the time of their passage.

The purpose of the act of 1865, as expressed by the legislature, was not only to fund the indebtedness there specified, but also to provide for its payment by taxation. Hence its provisions for registering the bonds and collecting them by taxation. The purpose of the act of 1872, as expressed by the legislature, was to provide a remedy for renewing or funding outstanding indebtedness where there was no existing provision for that purpose, and as it was for funding merely, there was no provision for the registration of the bonds, or their payment by taxation. Had the legislature intended that this last class of bonds should be subject to be registered, as were the former class under the act of 1865, we must think that they would have so provided, or at least have exhibited some indication of such an intention by reference to the act of 1865, or otherwise.

It does not follow, that, because the legislature saw fit to provide for the registration, etc., of the small class of bonds issued by counties and cities to fund indebtedness created prior to February 13, 1865, they must have intended that the much larger class of bonds issued by various other corporations under the acts of 1872 and 1875, should be subject to the same provision for registration, and taxation for their payment.

It is said that the acts of 1872 and 1875 are, in themselves, incomplete, in not making any provision for the payment of the new bonds to be issued under them, by taxation. We are unable to see that such is the case. There would at least be an equal remedy for enforcing payment of the new bonds, as of the prior indebtedness for which they were issued. The authority to fund outstanding indebtedness is conferred by the legislature upon corporations and municipalities which were

already vested by law with the power of contracting debts, and with complete means under their own control for the levy and collection of taxes for the payment of these debts. Had the legislature so directed, the second and subsequent sections of the act of 1865 would doubtless furnish a more satisfactory method, as respects the bondholder, for the enforcement of the collection of the bonds to be issued under the acts of 1872 and 1875, but it has not done so.

We think it apparent that the act of 1865, and those of 1872 and 1875, were enacted for different objects, to be accomplished by different means, and that each, for its own independent purpose, is still in full force; that it is a forced construction not admissible, that the two latter acts were amendatory of the former, and that the Auditor is correct in his conclusion, that bonds issued to fund indebtedness created since February 13, 1865, are not subject to registration in his office under the act of February 13, 1865.

The demurrer to the petition will be sustained, and the writ of *mandamus* refused.

*Mandamus refused.*

Mr. CHIEF JUSTICE SCOTT dissenting.