## LOUIS A. COQUARD

*v.*

## THE VILLAGE OF OQUAWKA.

*Opinion filed October 24, 1901.*

1. MUNICIPAL CORPORATIONS—*municipal corporations must have statutory authority to issue commercial paper.* Municipal corporations have no power to issue commercial paper except when conferred by statute, and without such power such paper is void even in the hands of an innocent holder for value before maturity.

2. SAME—*act of 1865, relating to county and city debts, construed.* The act of February 13, 1865, relative to issuing refunding bonds, by its terms applies only to *counties* and *cities* which had issued bonds *prior to the passage of the act;* nor does section 9 of the act broaden its terms so as to include any municipal corporations, other than such counties and cities, as had theretofore become indebted.

3. SAME—*municipal corporation has no implied power to issue refunding bonds.* The power of a municipal corporation to issue new negotiable bonds, having the attributes of commercial paper, to take the place of a former issue, cannot be implied merely from its ordinary powers as a municipal corporation, nor from its power, conferred by statute, to issue the original bonds. (*City of Quincy* v. *Warfield,* 25 Ill. 279, and *City of Galena* v. *Corwith,* 48 id. 423, distinguished and explained.)

*Coquard* v. *Village of Oquawka,* 91 Ill. App. 648, affirmed.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on writ of error to the Circuit Court of Henderson county; the Hon. JOHN J. GLENN, Judge, presiding.

The plaintiff in error brought assumpsit against the defendant in error in the circuit court of Henderson county to recover on five bonds, of $1000 each, issued by the city of Oquawka in 1871, together with unpaid interest. The declaration consisted of one special count and the common money counts. A demurrer was sustained to the special count. Pleas of the general issue and the Statute of Limitations were filed to the common counts and issue thereon taken. The cause was tried by the court, a jury having been waived, and judgment was ren-

dered for the defendant. The judgment was on writ of error affirmed by the Appellate Court, and the plaintiff then sued out this writ of error to reverse the judgments of the Appellate and circuit courts.

The plaintiff's cause of action is set forth in the special count, in substance and effect, that "the plaintiff complains of the village of Oquawka, a body politic and corporate organized and existing under the laws of the State of Illinois, the defendant, of a plea of trespass on the case on promises; for that whereas, heretofore, to-wit, at the county aforesaid, the defendant, on the first day of January, A. D. 1871, was organized as a town under and by virtue of the laws of the State of Illinois, and had then and there, in pursuance of an act of the General Assembly of the said State of Illinois entitled 'An act to authorize the town of Oquawka to subscribe to the capital stock of certain corporations therein named,' approved June 1, 1852, and also an act of the said General Assembly of the said State of Illinois entitled 'An act to incorporate the town of Oquawka,' approved February 11, 1857, (reference to which acts is hereby expressly made,) issued certain bonds of the said town of Oquawka, as the defendant was then known and named, which said bonds, to-wit, on the day aforesaid, were due and payable, and with interest then and there amounted to, to-wit, the sum of $60,000; that on, to-wit, the first day of July, 1871, for the purpose of compromising, settling and refunding said indebtedness and ridding said defendant of certain suits then and there pending against the said defendant under the name aforesaid, theretofore commenced against the said defendant named and known as aforesaid, and in pursuance of a certain act of the General Assembly of the said State of Illinois entitled 'An act relating to county and city debts, and to provide for the payment thereof by taxation in such counties and cities,' approved February 13, 1865, and in further pursuance and by virtue of the laws of the State of Illinois as they then existed,

at the county aforesaid, under the name and style of 'The City of Oquawka,' the town having theretofore changed to that of a city in form, made, executed and issued, in exchange for and upon the surrender of the said bonds theretofore issued, at the rate of fifty cents upon the dollar of the amount due on the said bonds theretofore issued, its certain five bonds in writing, each one signed by its then mayor and city clerk, and sealed with its corporate seal, and numbered, respectively, 10, 11, 12, 13 and 14, whereby, and in each and by each of the said bonds numbered as aforesaid, the said defendant, by the name and style of the said city of Oquawka, promised to pay the bearer thereof, twenty years after the date thereof, the sum of $1000, with interest at the rate of six per cent per annum, payable annually, on the first day of July in each year, at the agency of the treasurer of the State of Illinois in the city of New York, on presentation and surrender of the annexed coupons as they severally became due; and the said defendant then and there, on, to-wit, the first day of July, 1871, at, to-wit, the county aforesaid, delivered all of the said bonds to the holders and owners of the said other matured bonds at the rate aforesaid, and thereby then and there. became liable to pay the said five bonds to the bearer and holder thereof when due, according to their tenor and effect, and being so liable then and thereon, etc., promised to pay to the bearer the sums of money in said bonds, respectively, mentioned, together with said rate of interest therein specified, when due, according to the tenor and effect of said bonds."

There was printed on the face of each of these bonds this statement: "Issued under an act of the General Assembly of the State of Illinois entitled 'An act relative to county and city debts, and to provide for payment thereof by taxation in such counties and cities,' approved February 13, 1865." And said act was printed in full on the back of each of said bonds, together with the certifi-

cate of the Auditor of Public Accounts that said bonds were duly registered in his office on November 29, 1871, in pursuance of said act of 1865.

When the defendant in error contracted the original indebtedness and issued the original bonds, to take up and cancel which the refunding bonds sued on were issued, it was incorporated and organized as a town, but shortly before the refunding bonds were issued it had undertaken to change its form of government to that of a city, and so assumed to act. Afterward it organized as a village under the act for the incorporation of cities and villages. Said original bonds were in part issued in payment of a subscription to a plank road company, and the rest to reimburse certain persons for money and labor expended in construction of a railroad near said town of Oquawka.

FRANKLIN A. McCONAUGHY, for plaintiff in error:

The power to issue the original bonds for the purpose and in the manner in which issued was given by express provisions of law. *Jameson* v. *People*, 16 Ill. 257; Private Laws of 1857, p. 472; Laws of 1852, p. 89; Laws of 1853, p. 252; Laws of 1839, p. 131.

The conditions imposed by law upon the issuance of the original bonds were duly observed, and, generally, the municipal authorities strictly complied with the law. *Melvin* v. *Lisenby*, 72 Ill. 63.

All statutes are held to be remedial which have for their object important and beneficent public ends. *Marshall* v. *Vulter*, 1 E. D. Smith, 294; *Wolcott* v. *Pond*, 19 Conn. 597; *New Orleans* v. *St. Romes*, 9 La. Ann. 573.

A remedial act should be so construed as most effectually to meet the beneficent end in view. As a general rule it should be most liberally construed. It should receive an equitable, or rather a benignant, interpretation. The letter of the act should sometimes be enlarged, sometimes restrained, and construed contrary, if necessary,

to the letter.    It should be extended, by construction, to
other cases within the same mischief and occasion of the
act, though not expressly within the words.    24 Abbott's
N. C. 292; Potter's Dwarris, 231-236; *Pearson* v. *Lovejoy*, 53
Barb. 407; *Wolcott* v. *Pond*, 19 Conn. 597; *Hudler* v. *Golden*,
36 N. Y. 446; *Condon* v. *Hayward*, 37 id. 653; Endlich on
Interpretation of Statutes, secs. 108-112, and notes.

Long continued acquiescence and public recognition
preclude all question of any irregularity in municipal
organization.    *Jameson* v. *People*, 16 Ill. 257; *Hamilton* v.
*Carthage*, 24 id. 22; *People* v. *Farnham*, 35 id. 566; *Dunning*
v. *Railroad Co.* 2 Cart. 437; *Bank* v. *Dandridge*, 12 Wheat. 6.

The purchaser of bonds has the right to assume, from
the certificate of registration, the existence of all facts
necessary to that act.    *Cairo* v. *Zane*, 149 U. S. 123.

If, through carelessness, mistake or otherwise, bonds
recite the wrong act, mis-recite the right act or recite an
act which had been repealed at the time, such bonds are
nevertheless binding on the corporation if it in fact had
the legal authority to issue the bonds for the purpose for
which issued.    *Knox County* v. *Bank*, 147 U. S. 91; *Anderson
County Comrs.* v. *Beal*, 113 id. 227; *Railroad Co.* v. *Smith*, 23
Kan. 745; *Johnson County* v. *January*, 94 U. S. 202.

But, independently of either the act of 1865, of 1869,
or any of the subsequent acts in this municipality, the
inherent and implied power existed, by judicial determi-
nation, in the State of Illinois to refund its bonded in-
debtedness.    So it has been held repeatedly by the court
of last resort in this State, both before and after the
adoption of the constitution of 1870.    *Johnson* v. *Stark
County*, 24 Ill. 75; *Quincy* v. *Warfield*, 25 id. 281; *Galena* v.
*Corwith*, 48 id. 425; *Smith* v. *Peoria County*, 59 id. 425; *Bis-
sell* v. *Kankakee*, 64 id. 450; *Burr* v. *Carbondale*, 76 id. 474;
*Highway Comrs.* v. *Newell*, 80 id. 595; *Hardin* v. *McFarlan*,
82 id. 140; *Hyde Park* v. *Ingalls*, 87 id. 13; *Law* v. *People*, 87
id. 410; *Kane* v. *Charleston*, 161 id. 179; *Folsom* v. *School Di-
rectors*, 91 id. 402.

Raus Cooper, and Kirkpatrick & Alexander, for defendant in error:

A municipal corporation can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; and third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable. *Huesing* v. *Rock Island*, 128 Ill. 465; *Law* v. *People*, 87 id. 385; *Trustees* v. *McConnell*, 12 id. 138; *Hall* v. *Jackson County*, 95 id. 352; *Wells* v. *Whittaker*, 4 Ill. App. 381; *Strodtman* v. *County of Menard*, 56 id. 125; *Mt. Carmel* v. *Shaw*, 52 id. 433; *Chicago* v. *McCoy*, 136 Ill. 344; *Railroad Co.* v. *Chicago*, 148 id. 141; *Maywood Co.* v. *Maywood*, 140 id. 216; *Smith* v. *McDowell*, 148 id. 51; *Wheeler* v. *County of Wayne*, 132 id. 599; *Hewitt* v. *Normal School*, 94 id. 528; *Mayor* v. *Ray*, 19 Wall. 476; *Gaddis* v. *Richland County*, 92 Ill. 119.

A municipal corporation being created for governmental and not for commercial purposes, the power to borrow money or incur debts is not incident to its corporate existence. *Mayor* v. *Ray*, 19 Wall. 476; *Bourdeaux* v. *Coquard*, 47 Ill. App. 254; *Hutchinson* v. *Self*, 153 Ill. 550; *Law* v. *People*, 87 id. 410; 1 Dillon on Mun. Corp. 488.

If there is a doubt as to the power it is resolved against the corporation. *Hutchinson* v. *Self*, 153 Ill. 550; *Seeger* v. *Mueller*, 133 id. 86; *Merrill* v. *Monticello*, 138 U. S. 673; *Brenham* v. *Bank*, 144 id. 173; *Kelley* v. *Milan*, 127 id. 625; *Risley* v. *Howe*, 12 C. C. A. 220; *Bissell* v. *Kankakee*, 64 Ill. 250; *Hill* v. *Memphis*, 134 U. S. 194; *Ottawa* v. *Carey*, 108 id. 110; *Highway Comrs.* v. *Newell*, 80 Ill. 587; *Champaign* v. *Harmon*, 98 id. 491; Cooley on Taxation, 209; Dillon on Mun. Corp. secs. 151, 507, 507 *a*.

Where a particular mode is provided by statute to effect a particular purpose no other can lawfully be pursued. *County of Hardin* v. *McFarlan*, 82 Ill. 138; *Goodrich* v. *Lincoln*, 93 id. 359; *Locke* v. *Davison*, 111 id. 23; *Gaddis* v. *Richland County*, 92 id. 124; *Mayor* v. *Ray*, 19 Wall. 475.

Bonds issued in payment of an indebtedness for the payment of which the law provides for the levy of a tax, are void. *Middleport v. Insurance Co.* 82 Ill. 562; *Schaeffer v. Bonham,* 95 id. 380; *Merrill* v. *Monticello,* 138 U. S. 673; 15 Am. & Eng. Ency. of Law, 1236.

The city of Oquawka not being organized as a city until 1871, was not authorized by law to issue the bonds. *Oquawka* v. *Graves,* 53 U. S. App. 452; *Pitzman* v. *Freeburg,* 92 Ill. 111; *Welch* v. *Post,* 99 id. 471; *Enfield* v. *Jordan,* 119 U. S. 680; *Kelley* v. *Milan,* 127 id. 139; *Ogden* v. *Glidden,* 9 Wis. 50; *United States* v. *Gooding,* 12 Wheat. 476.

Mr. JUSTICE CARTER delivered the opinion of the court:

The question is presented by this record whether the defendant, as a municipal corporation, had any power to make and issue the bonds sued on. The question is not one of mere irregularity, but of power, and consequently it is immaterial to the decision of the case what was the consideration of the bonds or what the status of the holder, for it must be conceded that municipal corporations, organized, as they are, for restricted governmental purposes, have no power to issue commercial paper unless such power has been conferred by statute, and without such power such paper is void, even in the hands of an innocent holder for value before maturity. These bonds were issued, and so purported on their face, under an act of the legislature entitled "An act relating to county and city debts, and to provide for the payment thereof by taxation in such counties and cities." (Rev. Stat. 1874, p. 789.) Section 1 provides: "In all cases where counties or cities have heretofore, under any law of this State, issued bonds or securities for money on account of any subscription to the capital stock of any railroad company, or on account of, or in aid of, any public improvement, and the same remain outstanding, or any debt arising thereout remains unpaid, the board of supervisors or county court of such county, and the

city council or municipal authority of such city, as the case may be, having issued such bonds or securities, may, upon due surrender of any such bonds or securities, or cancellation of such debt, issue in place thereof to the holder or owner, new bonds, in such form, for such amount, upon such time, and drawing such interest as may be agreed upon with the holder or owner: *Provided,* such new bonds shall not be for a greater sum than the principal and accrued or earned interest unpaid of the bonds or debts in place of which they shall be given, nor bear a greater rate of interest than six per cent per annum, payable on the first day of July in each year; and such bonds shall show on their face that they are issued under this act, and, if so agreed, may provide for payment of five per cent of the principal thereof, annually, until fully paid." Section 9 provides: "If it shall be deemed advisable, any such county or city may issue such new bonds for the purpose alone of satisfying or taking up their respective bonds or debts."

It will be observed that the act, by section 1, was limited by its terms to *counties* and *cities* which had before its passage issued bonds, etc., and section 9 does not broaden the act so as to include any municipal corporation other than such counties and cities as had theretofore become indebted. When passed it had no application to towns or to villages, nor to cities generally, but was confined to counties and cities which had theretofore become indebted. No municipality could be brought within its provision by changing its form to that of a city. Without considering the alleged illegality of the incorporation of the town in 1871 as a city, the act no more applied to the city so organized after the act went into force than it did to the town superseded by such city. This court said in *People* v. *Lippincott,* 81 Ill. 193, that "the first section of the act by express terms limits its operation to debts created previously to the passage of the act;" and further, that the act limited the right to refund to counties and

cities; that it "applies to only a comparatively small class of bonds,—those issued by counties and cities prior to February 13, 1865." This is apparent from the language of the act. No room is left for interpretation or construction. The same conclusion was reached by the United States Circuit Court of Appeals for the Seventh Circuit, in *Village of Oquawka* v. *Graves*, 82 Fed. Rep. 568, in a suit on some of the same series of bonds sued on in this case, and it was there further held that the power to issue refunding negotiable bonds does not exist in a municipal corporation as of course, merely because it is indebted.

This brings us to the second proposition of plaintiff in error, that the town or city had the power to compromise, settle, take up and cancel the original bonds constituting an outstanding indebtedness against it, and to issue in lieu or payment thereof new bonds, negotiable, interest-bearing securities, payable at a future date, and this without statutory authority. That it had the power to settle and pay its debts which it had been authorized to create, and to take up and cancel its bonds which it had been authorized to issue, cannot be doubted; but it does not necessarily follow that the power to issue new, or refunding, negotiable bonds in the place of and to take up the old can also be implied. If it can, then, against the policy of our laws and without legislative authority, a municipal debt may forever be kept alive, and the municipality be subjected to the many disabilities and hardships which the law imposes on the makers of negotiable instruments when such instruments are held by innocent holders for value before maturity.

Section 12 of article 9 of the constitution of 1870 provides that any municipal corporation incurring any indebtedness shall, before or at the time of doing so, provide for the collection of a direct annual tax sufficient to pay the interest on such debt as it falls due, and also to pay and discharge the principal thereof within twenty years

from the time of contracting the same. It is not meant to be said that this provision of the constitution was violated by the issue of the bonds in question, but only that it is thus indicated that it is against the policy of our laws that municipal corporations should, at their pleasure or convenience, exercise the mere implied power of issuing and putting upon the market negotiable securities, even though they are issued to refund an outstanding indebtedness of unquestioned validity. This is also indicated by various acts of the legislature authorizing such corporate bodies to refund their indebtedness and to issue new bonds therefor, under such restrictions as are imposed by such acts. Thus, the act of March 26, 1872, (Gross' Stat. p. 115,) and the act of 1877 amending the said act of 1865, recite, in substance, that certain municipalities in this State have outstanding bonds and other evidences of indebtedness due or soon to fall due, and that such municipalities were without authority to refund or renew the same. But it so happened that no statute authorizing any such refunding and issuing of refunding bonds applied to the town or city of Oquawka, and we are of the opinion that such power cannot be implied merely from its ordinary powers as a municipal corporation, or from its power conferred by statute to issue the original bonds. *Merrill* v. *Monticello*, 138 U. S. 673; *Brenham* v. *Bank*, 144 id. 173; *County of Hardin* v. *McFarlan*, 82 Ill. 138; *Locke* v. *Davison*, 111 id. 19.

Counsel for plaintiff in error refers us to cases in other jurisdictions holding a contrary doctrine, and to cases decided by this court containing expressions also at variance with the view here taken. We are referred to *City of Quincy* v. *Warfield*, 25 Ill. 279, as sustaining his contention. But in that case it was expressly said that while no express power is granted to issue a bond for and in lieu of an over-due bond, the general power to issue bonds within certain fixed limits was expressly given by the charter of the city and without any regard to the pur-

pose. It therefore appeared in that case that the charter authorized the issue of the bonds sued on. The next case cited is *City of Galena* v. *Corwith*, 48 Ill. 423. But in that case the city was authorized by its charter to borrow money as it might deem necessary, not exceeding $20,000 in any one year, and to issue bonds, scrip or certificates therefor, to be used in liquidation of the debts of the city and for permanent and useful improvements. It seems clear that the city of Galena was authorized by its charter to issue the bonds sued on, and although language was used in the opinion sustaining the view of plaintiff in error, the case is not one where a recovery was had on refunding bonds issued without authority given for that purpose. In *County of Hardin* v. *McFarlan*, 82 Ill. 138, this court, speaking by the same judge who delivered the opinion in *City of Galena* v. *Corwith*, (the late Justice BREESE,) said: "It was held in *Commissioners of Highways* v. *Newell*, 80 Ill. 587, that more was said in that case (*City of Galena* v. *Corwith*) than the subject justified, and that it needed modification, confining it to cases where the charter of incorporation expressly grants a power, for a corporation cannot exercise any powers save those granted or necessarily implied, in order to carry into effect a granted power."

This court, as well as the Supreme Court of the United States, has quoted with approval the rule laid down by Judge Dillon in his work on Municipal Corporations, that "a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable." (*Cook County* v. *McCrea*, 93 Ill. 236; *Huesing* v. *City of Rock Island*, 128 id. 465; *Merrill* v. *Monticello, supra.*) "Any reasonable doubt concerning the existence of power is resolved by the courts against the

corporation, and the power is denied." See, also, *Marsh*
v. *Fulton,* 10 Wall. 676; *Ottawa* v. *Carey,* 108 U. S. 110;
*Jonesboro* v. *Cairo,* 110 id. 192; *Kelly* v. *Milan,* 127 id. 139.

In view of what has been said, we think the power
to issue new negotiable bonds, having the incidents of
commercial paper, to take the place of a former issue,
cannot be implied merely from the power originally con-
ferred authorizing such former issue.

It is usual, and is now required by the constitution of
this State, that provision be made for a tax to pay the
interest and the principal of the debt when due. Such
provisions, in the absence of statutory authority to re-
new, would seem to negative the implication of power
to re-issue, as contended for. As bearing upon this ques-
tion plaintiff in error cites also *Kane* v. *City of Charleston,*
161 Ill. 179, where, as applicable to the case then before
the court, we said (p. 185): "It is also a matter of pub-
lic interest that oppressive taxation should, as far as
possible, be avoided, and if, in the judgment of the city
council, the emergency which has here arisen can be met
with less inconvenience and with less oppression by is-
suing bonds bearing the lower rate of interest, to mature
in the future, than by levying a tax to be collected in a
single year, we see no reason why, from the standpoint
of public policy, it might not be allowed to do so. It
was said in *City of Quincy* v. *Warfield,* 25 Ill. 279: 'It is
true, the provisions of the charter authorizing the issuing
of bonds do contemplate that the city council will pro-
vide, by taxation, for their payment when due  *  *  *
and establish a sinking fund for that purpose, and doubt-
less that is the true policy.' Nevertheless, it was held
in that case that the failure to perform that duty did not
deprive the city council of the power to issue a new bond
in payment of the old, if not prepared to pay it at ma-
turity." But in that case (*Kane* v. *City of Charleston*) ex-
press authority to refund and issue new bonds had been
conferred by statute, and the question was whether the

statute was constitutional or not,—a question altogether different from the one presented in this case; and what was said as to the holding in *City of Quincy* v. *Warfield, supra,* that the failure of the city to pay did not deprive it of the power to issue a new bond in payment of the old, had reference to a case where the city had the power, by virtue of its charter, to issue bonds generally, without regard to the purpose, and therefore to issue the new or refunding bonds. We are unable to find in it any authority for the proposition that from the mere power to subscribe to the capital stock of a corporation and to issue certain bonds therefor or in aid of it, continued power is to be implied to issue and re-issue its interest-bearing bonds, negotiable in the mercantile world, to take the place of the bonds originally authorized. The question is not one of power to pay or to execute a written promise to pay, but of a continuing power to make and issue commercial paper.

Counsel cites also *Smith* v. *Peoria County,* 59 Ill. 412, *Bissell* v. *City of Kankakee,* 64 id. 249, *Burr* v. *City of Carbondale,* 76 id. 455, and others, which refer to *City of Galena* v. *Corwith* as authority. As has before been said, it is not the decision of that case, but certain language of the opinion, which we have held should be modified; otherwise it is not in conflict with the views we have expressed in this case. In *Hewitt* v. *Normal School District,* 94 Ill. 528, this court said (p. 531): "Municipal corporations are not usually endowed with power to enter into traffic or general business, and are only created as auxiliaries to the government in carrying into effect some special governmental policy, or to aid in preserving the order and in promoting the well-being of the locality over which their authority extends. * * * Being created for governmental purposes, the borrowing of money, the purchase of property on time and the giving of commercial paper are not inherent or even powers usually conferred, and unless endowed with such power in their charters they

have no authority to make and place on the market such paper, and persons dealing in it must see that the power exists. This has long been the rule of this court. [Citing cases.] We might refer to other cases where it has been held that bonds issued without authority are void, even in the hands of purchasers before maturity and without actual notice."

Counsel, however, insists, that if defendant in error did not have the inherent power, as a municipal corporation or by virtue of the act of 1865, to issue the bonds sued on, it had power under the act of April 16, 1869. We do not think so. Without setting out the lengthy provisions of this act, confined, as they are, to bonds issued in aid of railroads, it is sufficient to say that they do not, in our opinion, apply to the bonds issued by the defendant in error. Besides, the bonds on their face stated that they were issued under the act of 1865, the provisions of which were printed in full on said bonds, and in accordance with which they were registered in the Auditor's office. Then, again, the declaration alleges they were issued under the act of 1865.

The next contention is, that a recovery should have been allowed on the common counts on the original bonds or indebtedness. But said original bonds and indebtedness became due in 1871, and the Statute of Limitations having been pleaded, the action was barred before the suit was brought. In the next place, the defendant in error was never indebted to the plaintiff in error unless indebted to him as assignee of the bonds sued on, and never promised to pay him except as the holder of a negotiable bond payable to bearer. The original transactions were not had with nor were the bonds sued on issued or delivered to him or the written adjustment made with him, hence he cannot recover under the common counts in this action.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*