## The Austin-Western Road Machinery Company, Appellant, v. R. E. Wetzel, Appellee.

### Gen. No. 8,538.

Opinion filed November 4, 1931.
Rehearing denied and opinion modified January 7, 1932.

HELMER, MOULTON, WHITMAN & HOLTON and ARTHUR
YOCKEY, for appellant; HERBERT R. TEWS, of counsel.

PROVINE & WILLIAMS and RALPH W. ADAMS, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This suit is brought to recover the amount claimed to be due to appellant upon five certain promissory notes, executed by appellee as highway commissioner of the town of Prairieton, in Christian county, in the months of June and July, 1926, each note drawing interest at the rate of six per cent per annum, and all of said notes falling due in the months of March and April, 1927, to the full amount of $1,097.62. Appellant also, under the common counts, claimed to recover the value of goods sold and delivered by appellant to appellee, consisting of culvert pipe, purchased in 1924 and 1925 in the same amount. Appellee filed the general issue and there was a stipulation that appellee could make any defenses the same as though they were formally pleaded.

Culvert pipe was shipped by appellant to appellee as such highway commissioner in the seasons of 1924 and 1925 of the value of $899.90, and the same was used upon the highways of Prairieton township. It is shown by the proofs that Prairieton township made certain tax levies each year for road and bridge work, but under a system which had been in vogue for a considerable length of time. Notes or so-called "warrants" were issued for the material and work (except labor), drawing interest, and as the tax moneys came in the treasurer paid the notes which had run the longest period and satisfied the current contractors with promises to pay. Appellant had renewed three of his notes at two different times and the other two once. This suit was not commenced until August 10, 1929. A jury was waived. There was a hearing before the court and there was a finding and judgment for appellee and appellant has appealed.

Appellant attempted to show by the oral testimony of one Osborn, who was the commissioner of highways in 1924 and 1925, that certain moneys were received as taxes by the town for road and bridge purposes during the years 1924 and 1925. This testimony was objected to but the witness being permitted to answer could remember very little about it and while he did state that some moneys were received, he also said that all such moneys were paid out immediately upon the oldest orders or "warrants" outstanding, and that it left little or no moneys in the treasury.

Appellee introduced some sheets from the treasurer's account, showing income and outgo, but no attempt was made to identify or explain any item. The most that can be gathered from these sheets is that there was always a large deficit or overdraft. For example, March 24, 1924, the overdraft was $3,647.83; August 27, 1923, overdraft $3,153.37; September 1, 1924, overdraft $3,533.06; March 27, 1924, overdraft $3,533.06; April 8, 1925, overdraft $3,529.01, and September 1, 1925, overdraft $680.13. We have set down the figures just as they appear. Sometimes the treasurer moved forward. At other times it is apparent he retreated to earlier dates. At all times the account shows a deficit. No other showing being made, it must be presumed that all payments which he made were for bona fide bills incurred during the current year. It is impossible to state any account or determine any balance, either of receipts or expenditures, at any time during the years 1924 and 1925 of the commissioner's account.

But appellant's chief contention in this case is, that to render the contract legal and establish the indebtedness against the town it is not necessary to establish that the town either had funds on hand or a tax levy which could be anticipated, but it is merely necessary to show that the town or municipal authority had not created an indebtedness in excess of its constitutional

limitation of five per cent in the aggregate, on the value of the taxable property therein. (Sec. 12 of art. 9, Constitution.) Appellant takes this position upon the holding in *Euziere v. Highway Commissioner of Town of Rockville,* 260 Ill. App. 29; *County of Coles v. Goehring,* 209 Ill. 142; and *Town of Kankakee v. McGrew,* 178 Ill. 74.

In the *Goehring* case, which involved the necessity of building a courthouse in Coles county, the court placed the rule upon the public duty and imperative statutory command to boards of supervisors ''to build, as often as may be necessary, courthouses and jails,'' as a part of the governmental necessities of the State, and in the *Town of Kankakee v. McGrew, supra,* the injunction was ''to support the poor,'' as a public governmental function. Other cases could be added to this list, citing the *Goehring* case. *McGovern v. City of Chicago,* 281 Ill. 264, and *Gray v. Board of School Inspectors,* 231 Ill. 63, are each cases merely of defectively carrying out a granted power. *Pauly v. County of Madison,* 288 Ill. 255, is based upon the imperative duty imposed upon counties to provide courthouses. *St. Hedwig's Industrial School for Girls v. Cook County,* 289 Ill. 432, is based upon the public duty to care for dependent girls at industrial schools; and *DeKam v. City of Streator,* 232 Ill. App. 135, was claimed to be based upon the public policy of protecting the health of the inhabitants by furnishing city sewers, but the case was reversed by the Supreme Court, 316 Ill. 123. In all of these cases the theory of the courts has been that the municipal authorities were exercising an arm of the governmental authority of the State and that its action was public and for a public benefit as distinguished from local, special or private benefit. The subject is further discussed in *Board of Sup'rs, v. People ex rel. Commissioners of Highways,* 110 Ill. 511, which was a review of a judg-

ment in the circuit court of Will county awarding a peremptory writ of mandamus, commanding the board of supervisors of said county to cause to be levied and collected upon the taxable property of the county a tax sufficient to realize therefrom the sum of $9,088.50, to aid the commissioners of highways of the town of Wilmington to build an iron bridge across Kankakee river, etc. The court say:

"While it is true commissioners of highways, in counties under township organization, are corporate bodies, whose powers and jurisdiction are limited territorially to the respective townships to which they belong, yet they are a part of the machinery of the county and State governments, and as such, under certain contingencies, are required to act in concert with the county authorities proper, in the building and maintaining of bridges within their respective jurisdictions." In *Heffner v. Cass and Morgan Counties,* 193 Ill. 439, 451, the court said: " 'But, as we have already seen, there is also a public benefit, and it is only by virtue of the drainage being a matter of public importance that the involuntary land owner can be taxed for the improvement. The conclusion must be, that a drainage district formed under the statute in force July 1, 1879, is not a private corporation, but is a public corporation.' "

In *People v. Bowman,* 247 Ill. 276, 286, the theory of involuntary taxation is further elucidated: "The sanitary district and the drainage districts are all municipal corporations and creatures of the legislature. By their incorporation they acquire no contract rights. They are merely parts of the machinery employed in carrying on the affairs of the State. They exist only for public purposes, and possess no powers except such as are given them for public or political purposes." In *Board of Trustees v. Commissioners of Lincoln Park,* 282 Ill. 348, 355, the court said: "Is

the service of police officers local and corporate or public and governmental? If the latter, the legislature may require the levy of taxes without the consent of the local authorities. In *Town of Fox v. Town of Kendall, supra,* it was held the legislature could compel a municipality to levy taxes for the support of paupers. In *Board of Supervisors v. People,* 110 Ill. 511, it was held the legislature could compel a tax levy for the construction of a bridge across a river as a part of a highway.''

In *Chicago, M. & St. P. Ry. Co. v. Lake County,* 287 Ill. 337, 343, which involved the separation of a railroad crossing from grade and abolishing the grade crossing and apportioning the cost between the railroad, county and township, the court said: ''The cost apportioned to appellees by the State, acting through its authorized agency, was not for a local 'corporate' purpose,' but the improvement for which a part of the cost was apportioned to appellees is for the protection of the general public. That is a matter in which the State is interested in its governmental capacity, and while the State may not deprive a municipality of its discretion in incurring expense for improvements of a local corporate character, such municipality cannot stand in the way of the State's exercise of its powers for the preservation of life and the promotion of the public welfare. When the State acts in cases where the exercise of its powers are necessary, as where the safety of the general public demands the action, it becomes the duty of the local authorities to provide the means for complying with the order and requirement 'as in the case of any other legal obligation, and the performance of that duty is not prohibited by either section 9 or 10 of article 9 of the Constitution.' *North Fork Drainage District v. Rector Drainage District, supra.*''

The whole subject of involuntary taxation is appended in a very copious note to *State of Nebraska ex rel. Metropolitan Utilities Dist. v. City of Omaha,* 112 Neb. 694, 200 N. W. 871, found in 46 A. L. R. 602, with many Illinois cases found on page 710 and following. The whole question is whether the construction and repair of the ordinary roads and bridges of a township (as distinguished from the State aid and State roads) is a public, governmental function, or whether they are controlled by the township in its local, private and corporate capacity. Until the decision in *Euziere v. Highway Commissioner of Town of Rockville, supra,* by a long line of uninterrupted decisions these roads have been constructed and repaired by the townships in their local and private capacity. No statute of the State has imperatively directed how these roads should be constructed and repaired. No provision of the constitution has even directed that roads shall be laid out. The diversity of soil and climate and the variation in the extent of travel has rendered it impossible to enforce any uniform method or plan to improve all of the ordinary roads in this State. As to these roads, it has always been held that involuntary taxes should not be forced upon the taxpayer, except in rare emergencies and for great public benefit. It has further been held that no indebtedness could be contracted by the commissioners except to the extent of the funds on hand or to the levies made. (*Commissioners of Highways v. Newell,* 80 Ill. 587, 592; *County of Hardin v. McFarlan,* 82 Ill. 138, 141; *Law v. People ex rel. Huck,* 87 Ill. 385, 409; *Litz v. Village of West Hammond,* 230 Ill. 310, 314; *People v. Central Illinois Public Service Co.,* 328 Ill. 440, 442; *People v. Glenn,* 207 Ill. 50, 54; *Chicago & Eastern I. R. Co. v. People,* 200 Ill. 237, 243; *Coquard v. Village of Oquawka,* 192 Ill. 355, 365; *Chicago & Alton R. Co. v. People,* 190 Ill. 20, 22; *Hopkins v. People,* 174 Ill. 416, 417; *Com-*

*missioners of Highways v. Jackson,* 165 Ill. 17, 23;
*People v. Ross,* 275 Ill. 70, 72; *People v. Payne,* 296
Ill. 483, 484, and *Town of Lemont v. Singer & Talcott
Stone Co.,* 98 Ill. 94, 101.)

In *Commissioners of Highways v. Newell, supra,*
it was held: "From the provisions of the 116th sec-
tion, and the other provisions of the law, it is manifest
that the commissioners may, after they have levied
the road and bridge tax, proceed to its expenditure
for the purposes for which it was levied, in anticipa-
tion of its collection. But we fail to find any provi-
sion of the statute from which it may be inferred that
it was designed to empower them to incur any in-
debtedness beyond the amount already levied. With
*quasi* corporations of this character the rule obtains
that their power to impose taxes or incur indebtedness
will be strictly · construed. . . . 'The reasonable
presumption is held to be that the State has granted,·
in clear and unmistakable terms, all it has intended
to grant at all; and whatever authority the municipal
officers assume to exercise, they must be able to show
their warrant for, in the words of the grant. There
is no inherent power in municipalities to levy taxes;
they can tax only as the State, in its wisdom, has
thought proper to permit, and if the State has erred
in the direction of strictness, the legislature, alone,
can correct the evil.' " The court in this case also
points out *City of Galena v. Corwith,* 48 Ill. 423, and
explains the power under a special charter, and in
*Coquard v. Village of Oquawka, supra,* the court said:
"In *County of Hardin v. McFarlan,* 82 Ill. 138, this
court, speaking by the same judge who delivered the
opinion in *City of Galena v. Corwith* (the late Justice
Breese), said: 'It was held in *Commissioners of High-
ways v. Newell,* 80 Ill. 587, that more was said in that
case (*City of Galena v. Corwith*) than the subject
justified, and that it needed modification, confining it
to cases where the charter of incorporation expressly

grants a power, for a corporation cannot exercise any powers save those granted or necessarily implied, in order to carry into effect a granted power.' '' *County of Hardin v. McFarlan, supra,* and *Law v. People ex rel. Huck, supra,* follow in the exact line with the *Newell* case. In *Litz v. Village of West Hammond, supra,* the court held: ''Under the provisions of section 91, chapter 24, Hurd's Revised Statutes of 1905, the corporate expenditures for appropriations of the village in any one year cannot lawfully exceed the amount provided for in the annual appropriation bill of that year, and no contract can bè legally made or expense incurred by the village unless the object of the contract or expenditure shall have been included in the general appropriation bill and an appropriation therefor made (*City of Chicago v. Nichols,* 177 Ill. 97), except in an emergency,· the existence of which is denied by the bill now under consideration.'' In a late case, decided in 1928, *People v. Central Illinois Public Service Co., supra,* the court fully affirmed the *Newell* case and said: ''The rule accepted by all authorities is that the language of an act granting the authority to tax shall be strictly construed. The reasonable presumption is that the State has granted in clear and unmistakable terms all it intends to grant, and the municipal authorities who assume to exercise the power to tax must be able to show their warrant for the exercise in the words of the act granting the power.''

The other cases cited, *People v. Glenn, supra; Chicago & Eastern I. R. Co. v. People, supra; Coquard v. Village of Oquawka, supra; Chicago & Alton R. Co. v. People, supra; Hopkins v. People, supra,* and *Commissioners of Highways v. Jackson, supra,* all stand squarely on the *Newell* case and affirm its principle.

In *Town of Lemont v. Singer & Talcott Stone Co., supra,* the court said:

''We have repeatedly said that the taxing power is more liable to abuse than any other. But at the

same time we feel justified in saying, the abuse is more generally by the taxpayers themselves than by officers entrusted with the exercise of the power. This became so apparent that our present Constitution has imposed a limitation on the power of municipal bodies to incur indebtedness beyond a certain amount, to prevent ruinous taxation to meet the principal and interest. These abuses are generally self-imposed, by waste, extravagance or negligence of the people themselves, and when such is the fact, the courts are properly powerless to afford relief against their own acts, when legally performed.''

All of the cases deviating from the rule of *Commissioners of Highways v. Newell, supra,* have been cases where an imperative statute commanded a public duty or the public health or a public interest asserted a governmental power. The distinction between the line of cases, not always plain and obvious, yet is sufficient to define the rule. However much abuse there may be charged to the present system, yet the rule laid down in *Euziere v. Highway Commissioner of Town of Rockville, supra,* should not be established to add to the chaos and waste until the entire system of handling the funds is changed by a legislative act, if there is to be a change. We cannot agree with the contention that the commissioner of highways in this case has any power to permit or suffer by contract or otherwise, an addition to the indebtedness of the town. The cases generally hold that the funds and levies of each year are to be used for the expenses and work of the current year. Yet appellant cannot take any advantage of the mismanagement of the accounts for the years 1924 and 1925, because appellant has been a party to it, waived his claims and accepted the promissory notes of the commissioner of highways for his accounts. If this suit were against the commissioner in his personal capacity, appellant would be in a different situation. What are called ''warrants'' in this

record mention no fund, but are mere simple promises to pay, upon a fixed date, a definite sum, with a rate of interest attached. They are the promissory notes of the commissioner and issued without any compliance with the statute, are void as against the *quasi* corporation, the commissioner of highways.

Finding no error in the record, the judgment of the circuit court of Christian county is affirmed.

*Affirmed.*

Upon petition for rehearing and the citation of the case of *Euziere v. Highway Commissioners of Town of Rockville,* 346 Ill. 131, it is sufficient to add, that the *Euziere* case merely defines a rule of pleading, and does not in any manner, change the law of this State as to highway commissioners and has no bearing upon this case.

*Petition denied.*