# Illinois Central Railroad Company v. Road District No. 1, Alexander County.

1. HIGHWAY COMMISSIONERS—*when contract of, not ultra vires.* A contract made by highway commissioners with a railroad company for an easement right of way through an embankment thereof, is not *ultra vires,* but where acted upon by such highway commissioners and fully performed by such railroad company, is valid and enforceable.

Action of assumpsit. Appeal from the Circuit Court of Alexander County; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the August term, 1904. Reversed and remanded with directions. Opinion filed March 17, 1905.

YOUNGBLOOD & BARR, for appellant; J. M. DICKINSON, of counsel.

ALEXANDER WILSON, State's Attorney, and LANSDEN & LEEK, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

Appellant brought suit in the Circuit Court of Alexander county against appellee to recover $1,000, alleged to be due from appellee to appellant under and by virtue of a written contract which is fully set out in the declaration. The pleadings terminated in issue joined on defendant's demurrer to the amended declaration. The court sustained the demurrer and entered judgment against the plaintiff for costs, from which plaintiff appealed.

It appears that in December, 1891, there was pending in the Circuit Court of Alexander county a suit or proceeding instituted by the Highway Commissioners of Road District No. 1, in said county, to condemn an easement across the right of way of the Illinois Central Railroad Company's land through an embankment, under its tracks, at a point near Cairo in said county, and that a compromise of the said condemnation suit was effected, the terms of which are evidenced by a written agreement, entered into by and between the railroad company and the said road district. It further appears from the said contract and proper aver-

ments found in the declaration, that the aggregate amount agreed upon between the parties to be paid by appellee for the right of way easement, and the construction thereof by appellant, was $3,000; $1,000 of which was paid at the time, and two instruments in writing in the form of promissory notes executed by appellee for $1,000 each, payable to appellant in one and two years from the date thereof, which instruments were then delivered to appellant; and that this suit is brought upon the note falling due December 28, 1893. By the terms of said contract, and as a part of the said compromise, appellee was given an easement for a public highway eighteen feet wide under the tracks of appellant's railroad. Appellant was to proceed without unreasonable delay to excavate, build and construct the said subway eighteen feet wide and twelve feet high, with a paved roadway under the railroad at the point where the highway was to cross. Other provisions of the contract relating to the repair of the highway and containing walls, and to future extension of the embankment, have no bearing upon the present controversy. It is averred in the declaration, and under the demurrer must be taken as true, that appellant, immediately after the execution of said written contract, and at the expense of over $5,000, opened and constructed the subway through the embankment, under its railroad, with solid granitoid pavement and walls, in dimensions, material, and in all other respects, as required by the contract. It is further averred, that the subway when completed was accepted by appellee and dedicated to the use of the public as a highway, and that it has been used by the public ever since.

In support of the demurrer and the judgment of the Circuit Court, appellee contends that the highway commissioners had no power under the statute to contract with appellant for an easement right of way through the embankment under the railroad tracks, and that the contract upon which this suit was brought is *ultra vires* and void. The authority, power and duties of highway commissioners in laying out a new road, and in providing for the assess-

ment and payment of damages to land owners affected thereby, are found in chapter 121, R. S., entitled, "Roads and Bridges." By section 86, "They shall, before they order any road to be established, altered, widened or vacated, ascertain  *  *  *  the aggregate amount of damages which the owner or owners of land over which the road is to pass, shall be entitled to by reason of the location, alteration or vacation of such road."

Under section 87, "The damages by the owner or owners of the land by reason of the establishment, alteration, widening or vacation of any road may be agreed upon by the owners of such lands if competent to contract, and the commissioners,  *  *  *  in which case the agreement  *  *  shall be in writing." Here is authority by which the commissioners are empowered to contract in writing with the owners for the damages to be paid. Section 64, "When damages have been agreed upon, allowed or awarded for laying out, widening, altering or vacating roads, or for ditching to drain said roads, the amount of such damages shall be included in the first succeeding tax levy provided for in section 62 of this Act; and when collected shall constitute and be held by the treasurer of the commissioners as a special fund to be paid out to the parties entitled to receive the same."

Section 62 provides that the commissioners at their meeting to be held in September shall determine the rate per cent to be levied on the property of the district for roads and bridges.

From the foregoing provisions of the statute we are clearly of opinion that the commissioners of District No. 1 were fully authorized and empowered to agree with appellant upon the amount of damages to be paid, and by necessary implication and within the general powers conferred by section 18, they could enter into a written agreement for the construction of a subway such as provided by the contract now under consideration. The road could not be laid out and opened across appellant's right of way without damages first being ascertained by condemnation or agreement,

as provided by statute. And until so ascertained and paid, or an agreement to pay, the commissioners had no right to the crossing. Appellant having fully performed its part of the agreement, and appellee in behalf of the public having accepted and appropriated the subway crossing for use as a highway, may be held liable in law, under this contract, for the payment agreed upon. In strict conformity with section 64 of the statute, and to meet the obligation incurred by the agreement, a levy should have been made at the following September meeting of the commissioners. Whether or not such levy was made does not appear from the record, but in determining the rights of the parties to this action it is of no consequence. Nor will it avail in defense that the commissioners, in the exercise of unquestioned powers conferred by statute, have proceeded in an irregular and unauthorized manner. As we have already remarked, the opening of the highway across the railroad, the agreement with appellant for an easement, and the construction of the subway through the embankment, were all clearly within the legitimate exercise of duty and power given by the statute. The acceptance of credit, instead of payment of cash, the giving of promissory notes payable in one and two years without interest, instead of issuing orders on the treasurer, and the failure to levy a tax at the following September meeting to raise the necessary fund out of which to pay the indebtedness incurred, though not in accordance with the provisions of the statute, are, in this case, to be regarded as an irregular exercise of powers not affecting the legality and validity of the contract which the commissioners were empowered to make. In Westbrook v. Middlecoff, 99 App. 327, it was sought by bill in chancery to enjoin the payment out of city funds the balance due upon a contract made by the city of Paxton for the building of a city hall. The contract had been made and the building erected, accepted, and occupied, without first providing for the funds by annual appropriation ordinance, or a submission of the proposition to the legal voters as required by sections 2, 3, and 4, chapter 24, Rev. St., Cities and Vil-

lages.  Section 208, Criminal Code, was urged in the contention that the contract was utterly void, and that the payment out of the public funds was restricted under a penalty.

The court says:  "The City Council was invested with the power to contract through a committee, just as was done.  That is not disputed, but it is contended that no appropriation for the erection of the building by the annual appropriation ordinance of 1899 having been made, and no appropriation having been sanctioned by a majority of the legal voters of the city, either by petition or by vote at an election, the council was *prohibited* by the statute from entering into any contract creating any liability, or paying out any of the funds of the city for or on account of the construction of the building, and that the resolution directing the clerk to issue a warrant in favor of Middlecoff for the sum already paid out by him is void.

While courts should maintain with vigor the limitations which the statute has placed upon corporate action, whenever it is a question of restraining a city council in advance from passing beyond the bounds of statutory requirement, they should, on the other hand, enforce against the city, contracts of which it has received the benefit, if the subject-matter of the contract falls within the charter powers of the city.

Where the statute authorizes a municipal corporation to exercise a certain power, but specifically regulates the mode in which it may be exercised, an attempt on the part of the municipal officers to override the regulations and exercise it in another manner will be restrained; but when the officers have so acted, and the municipality has received the benefits of a contract thus irregularly entered into, it is estopped from setting up the irregular exercise of the power when called upon to pay for what it has received."

"The doing of the thing in a proper way is a legitimate charge upon the revenues of the municipality; and so when it is accepted and enjoyed by the municipality, the municipality gets what it had authority to get in a different way, and it should therefore pay for it what it would have paid,

had it got it in the right way." Badger et al. v. Inlet Drainage Company, 141 Ill. 540.

In this case, as it appears of record, there is no suggestion of fraud or unfair advantage secured by the contract. Appellant has fully performed its part of the agreement and appellee has received full value and enjoys all the privileges and benefits for which it contracted, and in the language above quoted, should be made to pay for it. The declaration counts upon the contract and from that the sum specified in the note is due and payable. The demurrer should have been overruled.

The judgment of the Circuit Court is reversed and the cause remanded with directions to overrule the demurrer and for further proceedings in conformity with this opinion.

*Reversed and remanded with directions.*