BERNHARD LITZ *et al.*

*v.*

THE VILLAGE OF WEST HAMMOND *et al.*

*Opinion filed October 23, 1907—Rehearing denied Dec. 6, 1907.*

1. MUNICIPAL CORPORATIONS—*a bill will lie to enjoin misuse of public funds.* Tax-payers of a village may maintain a bill to enjoin the misuse of public funds in the hands of the village treasurer notwithstanding the fact that warrants have been drawn against the fund, which are outstanding in the hands of the person in whose favor they were drawn.

2. SAME—*village cannot legally incur expense not provided for in appropriation ordinance.* In the absence of an emergency arising after the passage of the annual appropriation ordinance no contract can be legally made nor expense incurred by a village, unless the object of the contract or expenditure shall have been included in the appropriation ordinance and an appropriation made therefor.

3. SAME—*the method for acquiring property must be strictly followed.* If the statute provides for the acquiring of private property for the use of a municipal corporation by condemnation, and does not in express terms authorize the use of any other method, the municipal corporation is without power to acquire the property by private purchase.

4. SAME—*the title to property to be used for local improvement must be acquired by condemnation.* Title to land to be used solely . for the purpose of a local improvement, to be paid for by special as-

sessment, must be acquired by condemnation; and the municipal corporation has no power to acquire title by private purchase and pay for the land out of funds raised by general taxation. (*Snydacker* v. *Village of West Hammond,* 225 Ill. 154, explained.)

5. APPEALS AND ERRORS—*the decree cannot be sustained upon grounds not appearing in the record.* If it appears from the record that a bill for injunction was dismissed for want of equity, and it does not appear that the question of multifariousness in the bill was considered, the alleged multifariousness cannot be urged, on appeal, to sustain the decree dismissing the bill.

APPEAL from the Superior Court of Cook county; the Hon. W. M. McEWEN, Judge, presiding.

·Appellants, who are residents and property owners in the village of West Hammond, appeal from the decree of the superior court of Cook county dismissing for want of equity their bill filed therein against appellees for injunction and for other relief.

The bill alleges, among other things, that the village of West Hammond is a municipal corporation organized and incorporated under the act of the General Assembly of the State of Illinois entitled "An act to provide for the incorporation of cities and villages," approved April 10, 1872, in force July 6, 1872, together with the amendments thereto; that in the month of November, 1905, the president and board of trustees of said village passed a resolution resolving that said village of West Hammond should purchase from one Fred R. Mott certain premises situated within the said village, known as lots 18 to 25, inclusive, in Freitag's subdivision of that part of the south-east quarter of the north-west quarter of section 8, etc., lying south of the Michigan Central railroad; that they agreed with said Mott to purchase said lots for the sum of $3500, which amount was greatly in excess of their value; that subsequent to the passage of said resolution, and on November 10, 1905, said Mott and his wife executed and delivered to the village of West Hammond a warranty deed for said premises, and

that in pursuance of said agreement, and in return for such conveyance and as consideration therefor, the said president and board of trustees delivered to said Mott certain warrants of the said village of West Hammond, signed by it through its officers, drawn on the treasurer of said village, authorizing him to pay to said Mott the sum of $3500 out of any funds of said village in his hands not otherwise appropriated.

The bill further alleges that no provision was made in the appropriation ordinance passed at the beginning of the fiscal year of 1905 for the payment of the said sum of $3500, or any part thereof, as and for the purchase price of said lots, and that no proposition for the making of any such appropriation was ever sanctioned in any manner by a majority of the legal voters of said village, and that the purchase of said lots was not made necessary through any casualty or accident happening after the making of the annual appropriation in the said fiscal year 1905; alleges that on or about May 30, 1906, the president and board of trustees of said village passed an ordinance providing for the construction of a sewage pumping station and the building of a system of sewers within a portion of the said village, which portion was established and limited by said ordinance as a drainage district, which portion included only about one-third of the property located within the said village, and that under the terms of said ordinance only the property within said drainage district was to have the benefit and use of said pumping station and said system of sewers, and that complainants are the owners of real estate in the village of West Hammond not within the limits of said drainage district and therefore not entitled to the benefits or the use of said pumping station or system of sewers; alleges that the purchase by the village board of said lots 18 and 19 was for the sole object and purpose of locating and erecting the said pumping station thereon, and that the purchase of the remainder of said lots was for the purpose of using them in

connection with said sewer system and pumping station, or for some other purpose foreign to any of the lawful purposes for which a municipal corporation may purchase or hold real estate; that said Mott, at the time of such purchase from him, knew for what purpose the said lots were to be used; alleges that said ordinance passed on or about May 30, 1906, provided that the said pumping station should be constructed on said lots 18 and 19, and that no provision of any kind was made for the acquisition of said lots or for the payment for the same, or any portion thereof, by special assessment on the property to be benefited thereby, and that no portion of the property located within said drainage district was specially assessed to pay for the cost of said lots, nor was any provision made by said ordinance for the reimbursement of said village of West Hammond for the use of said lots for said pumping station; alleges that an assessment has been levied against the property within said drainage district for the costs of the construction of said pumping station and sewers, and that the board of local improvements has advertised for bids for the letting of the contract for construction and intends to award to one James Healy the said contract, and that said Healy, immediately upon the letting of the contract to him, proposes to proceed with the construction of said pumping station upon said lots 18 and 19; that the erection of a pumping station on said lots will render the same unsuitable and useless for any other purpose, and that if said lots are so used no property other than that within said district will derive any benefit from the use of said lots; that the said warrants have not yet been paid and are still owned by said Fred R. Mott; that the purchase of said lots and the issuance of said warrants therefor were wholly beyond the powers of the said president and board of trustees, and that the proposed use of said lots 18 and 19 by said village and said president and board of trustees is unlawful and beyond the power of said president, board and village, and that the said president and

·board of trustees are, in law, commissioners of said drainage district.

The bill prays that the sale of said lots may be rescinded and declared void and that said village· be required to reconvey said premises to Mott; .that Mott be required to deliver up and cancel said warrants issued to him and that the village treasurer be restrained from paying said 'warrants; that the village of West Hammond and James Healy be restrained and enjoined from constructing or beginning to construct the pumping station, building and foundations on said lots.

The village of West Hammond, the members of the village board, Mott, Healy and the village treasurer were made defendants. They appeared and filed a general demurrer,· which was sustained. . The complainants elected to abide their bill, which was thereupon dismissed for want of equity, and the cause comes to this court by appeal.

It is urged by· appellants that the court erred in sustaining the demurrer and in dismissing the bill.

LACKNER, BUTZ & MILLER, for appellants.

SAMUEL K. MARKMAN, (ALBERT MARTIN, of counsel,) for appellees.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Under the provisions of section 91, chapter 24, Hurd's Revised Statutes of 1905, the corporate expenditures for appropriations of the village in any one year cannot lawfully exceed the amount provided for in the annual appropriation bill of that year, and no contract can be legally made or expense incurred by the village unless the object of the contract or expenditure shall have been included in the general appropriation bill and an appropriation therefor made, (*City of Chicago* v. *Nichols,* 177 Ill. 97,) except in

an emergency, the existence of which is denied by the bill now under consideration. The village of West Hammond purchased the real estate in question and issued warrants to pay for the same without any provision for so doing having been included in the annual appropriation bill passed during the first quarter of the fiscal year in which the warrants were issued. Those warrants are still in the hands of Mott, from whom the real estate was purchased. The tax-payers are in equity the owners of the fund upon which the warrants are drawn. Municipal authorities are merely trustees, and can only hold and apply the fund to the legitimate purposes of the trust. "The law is established, beyond doubt or controversy, that a bill to enjoin public officers so situated from misappropriating the fund in their charge is a proper remedy for a tax-payer. Courts of chancery will interfere to restrain such authorities from a misuse of the fund entrusted to them or its appropriation to a purpose not warranted by law." *Adams* v. *Brenan*, 177 Ill. 194, and cases there cited.

The fact that the warrants had issued we regard as without significance. So long as they had not been paid, the funds of the municipality were not, in fact, applied to the purchase of this real estate, and so long as those funds remained in the hands of the village treasurer their unauthorized expenditure might be restrained at the suit of the tax-payer.

Upon this branch of the controversy appellees rely upon *City of East St. Louis* v. *East St. Louis Gas Light and Coke Co.* 98 Ill. 415, *Town of Kankakee* v. *McGrew*, 178 id. 74, *County of Coles* v. *Goehring*, 209 id. 142, and other cases, where the municipality itself, after the contract was executed by the other party thereto, has sought to avoid the performance of the contract on its part, where it could not put the other party *in statu quo* or where it did not offer so to do. It seems scarcely necessary to say that such cases are entirely without application here, where the suit is brought by tax-payers who were not parties to the contract.

It is also urged by appellants that the municipality was without right to acquire that portion of this real estate which it designed to use as a site for a pumping station for a system of sewers that was to be constructed by special assessment, except by condemnation. To this appellees reply that "in 1905, when the premises in question were acquired, the only method open to the village of West Hammond to acquire the property in question and pay for the same out of the general fund was first to seek to agree with the owner on the amount of compensation, and, failing in this, to take steps to acquire the property under the statute relating to the exercise of eminent domain."

We think the proposition just quoted inaccurate in view of the fact that it appears from the bill that lots 18 and 19 of the property purchased were acquired for the sole purpose of erecting thereon the pumping station which was to be used in connection with the sewer system, and that said lots, if so used, could be used for no other purpose. Where private property must be acquired for the making of any local improvement, to be paid for, in whole or in part, by special assessment, the statute requires that the title thereto shall be obtained by condemnation proceedings. (Hurd's Stat. 1905, chap. 24, sec. 519; *Village of Hyde Park* v. *Spencer,* 118 Ill. 446.) "Where the method by which property shall be obtained by a village has been prescribed by the legislature that method is exclusive, and where the law provides for acquiring property by condemnation," and does not in express terms authorize the use of any other method, "a village cannot acquire it by private purchase, which would lead to favoritism, corruption, private bargain and the exercise of improper influence." (*Snydacker* v. *Village of West Hammond,* 225 Ill. 154.) Where the only purpose for which the real estate is acquired is that it may be used in making local improvements, the provisions of the statute requiring condemnation may not be defeated by an attempt

to purchase the property and pay for it out of funds result-ing from general taxation.

The question of the title of the village to the lots' 18 and 19 was considered in *Snydacker* v. *Village of West Hammond, supra,* where it was said that "the deed to the appellee [the village] divested the grantor of his estate and vested it in appellee, and no one has questioned the legality of the purchase by any proceeding against appellee;" and it was therefore held that it was not a good objection to an application for the confirmation of the special assessment to pay for the pumping station and system of sewers that the title to this real estate had been acquired by purchase. So far as appeared from the record then before us, the title vested in the village might never be disturbed, and the objection to the confirmation of the assessment could not be sustained merely because there was a possibility that the conveyance to the village might thereafter be found to be invalid. It did not appear from that record that a suit had been or would be brought to test the validity of that transfer to the village. The rights of the objectors in the special assessment proceeding would perhaps have been better conserved had the question of the validity of the title of the village to the real estate been litigated at their instance prior to the hearing of their objections to the confirmation of the assessment.

While we do not regard it as here material, yet for the purpose of explaining what might seem to be an inadvertence, we point out the fact that it appeared from the record in the *Snydacker case* that the real estate had been paid for by the village.

This suit was instituted by appellants as property owners paying taxes upon property within the village but not within the district to be benefited by the sewer system, the pumping station for which was to be located upon the real estate purchased of Mott.

From one portion of the bill it appears that the board of local improvements is about to award to Healy the contract for the erection of the pumping station and that Healy will immediately proceed to construct the same upon said real estate, and the bill asks an injunction to restrain Healy from performing the contract. The station is to be constructed solely with funds raised by the assessment of property lying within the district. Appellants contribute nothing to that fund, and they have not attempted to show by their brief and argument that the demurrer was improperly sustained as to this part of the bill. The errors assigned, in so far as they question the action of the court below in sustaining the demurrer to the part of the bill by which an injunction was sought to prevent the construction of the pumping station, must therefore be regarded as waived.

Appellees urge, however, that the inclusion of the portion of the bill just referred to makes the bill multifarious, and that the demurrer was properly sustained for that reason. We deem it unnecessary to consider this question. It appears from the record that the court dismissed the bill for want of equity. It does not appear that the demurrer was sustained on the ground that the bill was multifarious. There may be equity in a bill even though it be multifarious and for that reason obnoxious to a demurrer. Where the record shows that the bill was dismissed for want of equity and it does not appear that the question of multifariousness was considered by the court below, appellee will not be permitted to sustain the decree in this court on the ground that the bill is multifarious. Had the demurrer been sustained for that reason appellants would have had an opportunity to ask leave to amend, and had leave been granted this objection could readily have been obviated by the amendment.

The decree of the superior court will be reversed and the case will be remanded to that court for further proceedings consistent with the views herein expressed.

*Reversed and remanded.*