## James Meehan et al., Appellants, v. George Parsons et al., Appellees.

1. EQUITY, § 313*—*when sworn answer evidence.* Statements in a sworn answer to a chancery bill which waive answer on oath are to be taken as true where no replication is filed.

2. MUNICIPAL CORPORATIONS, § 1149*—*when expenses of mayor's lobbying trip payable from contingent fund.* Expenses of a successful voluntary trip of the mayor of a city to lobby before congress for an appropriation for the repair of city levees, which had been damaged by a flood, do not fall within the class of contingent expenses which may be paid from the contingent fund.

3. MUNICIPAL CORPORATIONS, § 1149*—*when expenses of mayor's lobbying trip payable from particular fund.* The expenses of a successful voluntary trip of the mayor of a city to lobby before congress for an appropriation for the repair of city levees, which had

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

been damaged by a flood, are not payable from a fund raised by the city to build, raise or repair levees.

4. MUNICIPAL CORPORATIONS, § 1149*—*when expenses of mayor's lobbying trip payable from particular fund.* Expenses incurred by the mayor of a city on a successful voluntary trip to lobby before Congress for an appropriation for the repair of city levees, which had been damaged by a flood, are not payable under section 3, art. VII, ch. 24, Rev. St. (J. & A. ¶ 1362), relating to payments for improvements necessitated by any casualty or accident arising after the making of an annual appropriation bill.

5. MUNICIPAL CORPORATIONS, § 164*—*validity of contract to pay expenses of mayor's lobbying trip.* The agreement of a city to reimburse its mayor for expenses incurred by him on a successful voluntary trip to lobby before congress for an appropriation for the repair of city levees damaged by a flood, is against public policy and void.

HIGBEE, J., dissenting.

Appeal from the Circuit Court of Alexander county; the Hon. WILLIAM N. BUTLER, Judge, presiding. Heard in this court at the October term, 1914. Reversed and remanded with directions. Opin-. ion originally filed November 10, 1913. Rehearing granted and opinion filed May 1, 1915.

C. S. MILLER, for appellants.

ANGUS LEEK and GILBERT & GILBERT, for appellees.

MR. JUSTICE HARRIS delivered the opinion of the court.

Appellants as citizens and taxpayers of the city of Cairo presented and filed in the Circuit Court of Alexander county their bill in chancery for temporary and permanent injunction. The material allegations of the bill are as follows:

That about the 1st day of June, 1912, one George Parsons of said city of Cairo, county of Alexander and State of Illinois, went to attend meetings of Congress in the city of Washington, there to lobby for and obtain if possible an appropriation of government money for the levees and embankments in and about the city of Cairo and in and about the drainage district ad-

jacent thereto in said county and State. That the said George Parsons was at the time and still is the duly elected and qualified mayor of said city and was at that time and still is in receipt of the duly authorized salary of $1,000 per year for his services as such mayor. That said George Parsons went to the said city of Washington, D. C., and did work there, on behalf of an appropriation for the levees in Cairo and said drainage district adjacent, and it is alleged that such work was done on behalf of the Cairo Drainage District, a municipal corporation lying outside of the city of Cairo, and on behalf of railroads, other corporations and himself as well as on behalf of said city of Cairo. That said George Parsons has, since his return from said city of Washington, filed with the city council of said city of Cairo his bill for services rendered and expenses incurred in connection with said lobbying trip to said city of Washington, D. C., amounting to the sum of $1,500, thereby alleging that said city of Cairo is indebted to him, the said George Parsons, in addition to his annual salary of $1,000. That said bill for services and expenses so filed was by said city council duly referred to the finance committee of said city council and was by said finance committee duly recommended for allowance. That said bill so recommended is about to and will be presented to said city council at its next regular meeting to be held August 13, 1912, at eight o'clock p. m., in said city of Cairo. That the city council at said meeting will duly allow and order paid to said George Parsons the amount of said bill so filed as aforesaid and that Robert A. Hatcher, the city clerk of said city of Cairo, will immediately upon the allowance of said bill, issue an order for the amount thereof to said George Parsons, and that James Quinn, the city treasurer of said city of Cairo, threatens and appellants believe will pay to said George Parsons the amount of his said illegal charge against said city,

unless the said Robert A. Hatcher and said James Quinn, who are made parties defendant to said bill, are restrained therefrom. That the purported services and expenditures rendered by said George Parsons were not rendered or made for corporate purposes for and on behalf of the said city of Cairo and were not authorized by law, and is not a lawful claim against said city. That said city council of the city of Cairo has not by any appropriation ordinance duly appropriated any money or moneys or set aside any fund for such purpose or purposes, as aforesaid, and that such payment for money aforesaid is illegal and unauthorized by the statute of the State of Illinois.

The prayer of said bill is the usual form, calling for an answer of defendants and waiving answer under oath; that said Robert A. Hatcher, city clerk, James Quinn, treasurer, and George Parsons be enjoined from issuing warrant, paying same out of treasury of city of Cairo the said $1,500, or any other amount for the purposes aforesaid to the said George Parsons. Prayer for writ of injunction and summons. Affidavits in usual form giving court jurisdiction. Order issuing temporary injunction on the 13th day of August, 1912, returnable to the 1st day of October term, 1912, of said Circuit Court.

The appellees to this bill file their joint and several answer to said bill, under oath. The material averments of which are:

After the formal averments they admit complainants are residents and taxpayers of the city of Cairo. They further admit that the said George Parsons went to attend the meetings of congress in the city of Washington and to lobby and obtain, if possible, an appropriation of government money for the levees and embankments in and about Cairo and in and about the drainage district adjacent thereto in the county of Alexander. That said George Parsons was at that time and still is the duly qualified mayor of the city of

Cairo, and duly authorized and drawing the salary of $1,000 per year for his services as mayor. They further admit that George Parsons on his trips to Washington did work on behalf of an appropriation for the levees in Cairo and said drainage district adjacent. They deny that he, said Parsons, did the work for himself or any drainage district corporation or person, except the city of Cairo. They aver that the work was done at the instance of said city and for its special benefit and not otherwise. They deny that the Cairo Drainage District lies outside of Cairo, but one of the main levees, known as "Cross Levee," protecting from inundation that portion of the city of Cairo which lies south of said cross levee, is situate within and also constitutes one of the levees of said drainage district as well as one of the levees of said city. They aver that the work to be complete must embrace the levees of said drainage district as well as levees of the city; that it took all to protect the city, and the money expended on either or both were for the benefit of the city of Cairo. They deny that any bill was filed by said George Parsons for services presented or referred to finance committee or ordered paid or that any was about to be allowed or paid for any services by him rendered to or for said city in the matter of securing appropriation, and deny that he makes any claim therefor. They deny that the city council has not by appropriation ordinance set aside a fund out of which this bill may be paid for the purpose aforesaid. They deny the claim was illegal and unauthorized by statute. They deny that the services rendered and expenditures were not made for corporate purposes and is not a lawful claim against said city in so far as any of the allegations of said bill have application to the matter of actual expenses incurred and paid by said George Parsons and the refunding of same to him by said city.

They aver by reason of a flood in the Ohio and Mis-

sissippi rivers, which occurred after the passage of the annual appropriation ordinance, an emergency arose: First, that the city, without assistance, was unable to furnish the means to strengthen its levees, and second, that the city would suffer materially if it was not done before the next spring rise; that as a result of the trips and efforts of George Parsons congress appropriated $250,000 for said emergency work on condition that the city of Cairo would expend a like amount.

They aver that the expenses of the said Parsons were reasonable, necessary and suitable expenses, and that he did pay out in excess of the sum of $1,500 as expenses on said trips; that on August 6, 1912, on his return he, the said Parsons, called the attention of the city council to the matter of his said expenses, the matter was referred to finance committee and afterwards on the 13th day of August, 1912, reported back and the sum of $1,500 to reimburse him for his expenses aforesaid was allowed.

They further aver that the Cities and Villages Act chapter 24, art. V, par. 62, secs. 1, 3, 32, Hurd's Rev. St. 1913 (J. & A. ¶ 1334, §§ 1, 2, 32) grants to city council power: First. To control finances of city. Second. To appropriate money for corporate purposes provided for payment of debts and expenses. Third. To erect and keep in repair levees.

They then aver the passage of an ordinance for annual appropriations passed January 25, 1912, and make the same Exhibit "A" to the answer. It is averred this ordinance contained an item to pay contingent expenses, $4,500, and that on the 13th day of August, 1912, this fund had a balance of $1,877.28, out of which said sum of $1,500 could have been legally paid to said George Parsons for the purpose of reimbursing him for the expenses so incurred in connection with his trips to Washington, D. C. They further answer by setting out an act of the legislature to

enable cities, villages and towns threatened with over-flow to levy taxes by vote of electors and issue anti-cipation warrants, etc. Approved June 11, 1897. And aver that under the act and a vote of the people, ordinance number 86 was passed levying a tax, etc., or-dinance number 86 attached to answer and marked Exhibit "B," under and by which said statute and ordinances a fund had accumulated, having a balance August 13, 1912, of $4,500, out of which the sum of $1,500 could have legally been paid to George Parsons for the expense aforesaid.

It is further averred that under the Cities and Vil-lages Act, ch. 24, art. VII, sec. 3 (J. & A. ¶ 1362), and the proviso of said section, that the city council had the power by a two-thirds vote to authorize any improvement the necessity of which is caused by casu-alty or accident happening after the annual appropria-tion is passed; that by a like vote the city council may authorize the mayor or finance committee to borrow money to make the necessary improvement. They aver the flood in the spring of 1912 brought about this condition and brought such expenditures within the provision of said section 3. The joint answer con-cludes with the formal averments, followed by the signatures of appellees and the affidavit of each to the answer.

The answer and exhibits are followed by the affi-davits of Ernest Nordman and Robert A. Hatcher, city comptroller and city clerk, respectively, the first as to the financial condition of the treasury and the second that the Exhibits are true and correct copies of ordinances of said city. This was followed by Exhibit "C": A report of finance committee recommending payment of $1,500 to George Parsons. Then follows publication of official proceedings of city council of August 13, 1912, marked Exhibit "D". Upon the foregoing the appellees moved to dissolve the injunc-

tion. A hearing upon the motion resulted in a decree finding the allegations of the answer true and ordering dissolution of injunction. After suggestion and allowance of damages the court found that the bill filed was exclusively for injunction, and the injunction, having been dissolved, the bill was dismissed at appellant's costs, exceptions and this appeal.

The usual errors to protect appellants in their contention under this decree are assigned, all of them are argued, and will be determined by the main question in the case: Was the city council vested with the authority to appropriate $1,500 of the corporate funds of said city to the payment of George Parsons' expenses on his trips to Washington, D. C., for the purpose of lobbying for an appropriation by congress for the improvement of the levees in and around the city of Cairo.

In answering this proposition from the pleadings, evidence and affidavits introduced on the hearing, it will not be necessary to make a further statement of fact than to state the facts that are not in dispute. The statements in an answer under oath, where the oath has been waived and where no replication is filed, are to be taken as true. *Farrell v. McKee,* 36 Ill. 225. The competency of some of the evidence becomes immaterial because appellants and appellees by their statements in and out of pleading admit:

First. That appellants are competent parties to maintain bill.

Second. That appellees are officials of the city of Cairo as by the bill designated.

Third. That George Parsons as the mayor was drawing a salary of $1,000 per year.

Fourth. That in the summer of 1912 the said George Parsons made three trips to Washington, D. C., to persuade congress to make an appropriation for the improvement of the levees in and about the city of Cairo.

Fifth. That he, said Parsons, spent upon said trips of his own funds more than the sum of $1,500.

That on the 6th day of August, 1912, he presented to the city council his bill for such expenses, which was by the council referred to the finance committee, and that the finance committee recommended payment of the same; that the council on the recommendation of said committee allowed said claim and ordered the same paid.

The concluding statement in argument of appellees is that only one point is discussed by appellants on which authorities are cited, and this point is not covered by any allegations in complainant's bill. This statement of appellees is not supported by an examination of the bill. The bill alleges that the bill for expenses was not within the corporate powers of the city to pay, was in violation of the statute, and was not included in the annual appropriation ordinance. This may be considered as pleading conclusions, and pleading the law. The decree was based upon such statements in bill and answer, and the admitted facts raise only a question of law.

Appellees in their answer have called the attention of the court to the statutes of the State of Illinois, granting powers to the city: "To control the finances of the City;" and while they insist on a liberal construction of this statute they do recognize that this power has certain limitations and restrictions: "Municipal authorities are merely trustees, and can only hold and apply the fund to the legitimate purposes of the trust."

"Courts of chancery will interfere to restrain such authorities from a misuse of the fund entrusted to them or its appropriation to a purpose not warranted by law."

Where the suit is brought by taxpayers, who were not parties to the contract, the fact the contract had become executed by the other party would not affect

the right of the taxpayers to maintain the suit. *Litz v. Village of West Hammond,* 230 Ill. 310.

Appellees recognizing that the payment of these expenses must be justified by showing that it was for corporate purposes and within the law, their first contention is that under the head of contingent expenses it was included in the annual appropriation ordinance. This is done to meet section 91, ch. 24, Hurd's Rev. St. (J. & A. ¶ 1363), which provides that the corporate expenditures for appropriations of the city or village in any one year cannot exceed the amount provided for in the annual appropriation bill of that year, and no contract can be legally made or expense incurred unless the object of the contract or expenditure shall have been included in said appropriation bill, except in an emergency. There was no fund for improvement of levees included in this appropriation bill.

It is by answer submitted to the court that the flood in the spring of 1912 brought about the contingency which justified the expenditure of money. If the money was paid out for the rebuilding of levees that were at that time destroyed and which it was necessary to repair, the argument would be in line with the meaning of the word "contingent," something uncertain and liable to happen, but to say because the authorities found after this flood that their levees were insufficient and their funds inadequate to make them sufficient, the mayor might of his own volition go soliciting funds from other sources for the benefit of the city and upon his return call upon the city to be reimbursed to the amount claimed by him to have been expended, does not fall within what we regard as contingent expenses for corporate purposes. This under the head of contingent expenses would lead to favoritism, corruption, private bargain and the exercise of improper influence. Money held by the trustees of said fund for contingent expenses must be applied

directly to that purpose and not indirectly.   The indirect route takes it out from under the head of contingent expenses.   As to the second contention of appellees, that the appropriation for expenses aforesaid were legal, our attention is called to an act to enable cities and villages threatened with overflow and inundation to levy taxes by vote of electors in excess of the two per cent. to strengthen, build, raise or repair the levees around the same and issue anticipation warrants on such taxes.   Hurd's Rev. St. 1903, page 543. That in pursuance of said act the city of Cairo passed ordinance No. 86 October 13, 1897, making the levy authorized by vote October 1, 1897, under ordinance No. 81, and that in pursuance of the levy aforesaid the city acquired a large sum of money known and designated as the "Levee Fund," and that there remains in said fund so levied and collected the sum of $4,500, out of which said expenses could be lawfully paid. The act under which this fund was levied and collected had been declared unconstitutional.  *Hodges v. Crowley*, 186 Ill. 305.

It is not necessary in this proceeding to determine for whom or for what this fund is to be held or used, but to determine whether or not as against the objection of a taxpayer any part of it may be used for paying these expenses.   George Parsons had no express contract with the city to repair, rebuild or strengthen any levees or to furnish anything, money or material, for that purpose.   He could not claim any part of this fund for any other purpose, and the city council could not speculate with this money to raise more money for the same purpose.

Appellees, as the third ground, insist that the allowance of this bill was lawful because section 3 of art. VII of chapter 24, Rev. St. (J. & A. ¶ 1362) gives the city council the power to order an improvement, the necessity of which is caused by any casualty, or ac-

cident, after the annual appropriation bill has been made, by a two-thirds vote.

There is no way of reasoning by which the payment of this bill is an act of the city council ordering an improvement, which was necessary to come under this statute. That it was not an accidental expense, as it was deliberately and voluntarily made without any action of the city council making it necessary.

This disposes of the three contentions of appellees justifying the expenditure of this $1,500, and in considering these propositions we have taken the statements of fact in the answer as true: That appellee, Parsons, acted voluntarily and for what he believed was for the best interest of the city of Cairo. However, upon the face of the pleadings, here is a contract and the appropriation of funds for a purpose not within the law. Whenever and wherever the illegality appears, the disclosure is fatal and the court will not proceed to judgment even though both parties assented thereto. In this case we have as parties more than individuals, officials or a city on the one side and the taxpayers on the other.

Appellee Parsons says his expenses were not paid back to him under the contract that he should secure an appropriation from congress. He admits that if he had an agreement express or implied for reimbursing him to the amount of his expenses contingent upon obtaining this legislation, it would be void as against public policy. If he went to Washington as mayor without an express agreement to have his expenses paid and congress had failed to make this appropriation, would it be contended that the city was legally obligated to pay his expenses upon presentation? We think not, first, as an official of the city he had no right to create any such expense, and second, the expenses were for a purpose for which the law and the ordinance made no provision. The only claim made by appellee Parsons to give the city power to

make this payment is that he had an implied contract with the city to go to Washington, D. C., and by lobbying secure for the city of Cairo this appropriation, which he did, and in doing so brought about what would be an improvement of the levees.

This contention brings the payment of this money within the line of authorities that makes money paid contingent upon obtaining legislation unlawful. *Hazelton v. Sheckels,* 202 U. S. 71. *Crichfield v. Bermudez Asphalt Paving Co.,* 174 Ill. 466.

This was an unauthorized diversion of the public funds of the city and a subject for injunction. *City of Chicago v. Nichols,* 177 Ill. 97.

Appellee George Parsons having no legal claim against said city, and no claim that the law would permit said city to pay, cannot obtain relief in a court of equity. The decree and judgment of the Circuit Court is therefore reversed and the cause remanded with directions to the Circuit Court to set aside said decree, and enter a decree overruling motion to dissolve injunction and the making of the temporary injunction permanent.

*Reversed and remanded with directions.*

MR. JUSTICE HIGBEE dissents from the conclusions reached by the majority of the court in this cause, his views in regard to the matters in controversy being fully expressed in the original opinion filed herein.