## Peter De Kam et al., Appellees, v. City of Streator et al.  G. L. Clausen, Appellant.

### Gen. No. 7,302.

1.  MUNICIPAL CORPORATIONS—*estoppel of taxpayers to enjoin payment on contract let without appropriation.*  Taxpayers are estopped to set up the failure of the city council to make an appropriation therefor before employing a civil engineer to make a preliminary survey for an additional sewer system, the preparation of plans and specifications therefor, securing the approval of the State board of health, etc., in a suit to enjoin the city from paying such engineer for his services which have been fully performed by him in good faith and accepted by the city, and partially paid for, where no fraud or collusion is alleged or shown, and it appears that the contract of employment was entered into by both parties in good faith,

after extensive publicity by advertisements in the public press of which complainants had constructive notice, at least, and because of an existing emergency, and that the services of which the city has had the benefit, were reasonably worth the amount claimed.

2. MUNICIPAL CORPORATIONS—*evidence in taxpayers' suit to enjoin payment without previous appropriation.* In a taxpayers' suit to have declared void contracts entered into between a city and a civil engineer for services in making a preliminary survey and preparing plans and specifications for a sewer system and to enjoin payment for such services, which have been fully performed in good faith and accepted by the city, for want of any appropriation made by the city before entering into the contract, it was not error to exclude evidence that the sewer as projected was impractical and otherwise wholly useless, where the project was approved by the board of local improvements, the city council and the State board of health.

Appeal by defendant from the Circuit Court of La Salle county; the Hon. EDGAR ELDREDGE, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded. Opinion filed February 16, 1924.

ANDREW HUMMELAND and DUNCAN & O'CONOR, for appellant.

BOYS, OSBORN & GRIGGS, for appellees.

MR. JUSTICE JETT delivered the opinion of the court.

This is an appeal from a decree rendered by the circuit court of La Salle county, finding certain contracts entered into between the City of Streator and the appellant, G. L. Clausen, null and void, enjoining said city and its officers from making any further payment to the appellant for services rendered under said contracts and prohibiting said appellant from rendering any further bill for services under said contracts or in connection therewith.

On the 14th day of February, 1919, an agreement was made and entered into between appellant, Clausen, an engineer of the City of Chicago, and the City of Streator by its Board of Local Improvements. It was recited in said contract:

"That whereas, there is not now any appropriation by the City Council of the City of Streator, Illinois, for the purposes hereinafter stated, and said Board of Local Improvements has no authority to bind any further City Council or the Board of Local Improvements of said city;

"But whereas, the sanitary conditions of the City of Streator, Illinois, are such that immediate action should be taken toward the preparation of a proper plan for and the installation of an adequate sewer system in said city, and it is considered advisable by all of the parties hereto that the preliminary work leading up to the preparation of such a plan and the installation of such a system should be commenced immediately."

Appellant, in said contract, agreed to make a detailed and complete topographical survey of the land within the corporate limits of the said City of Streator and of any lands outside the city limits from which storm water may be drained through the city showing the surface level; and also obtain by actual measurements on the ground all possible information as to the elevation and condition of the existing sewers for the purpose of combining, if possible, any of the existing sewers with the proposed new system; also, upon completion of the survey, to compile all data in map form and to plan an adequate sewer system for the City of Streator, with reference to the possible future development of said city, showing all details as to grades, sizes, locations, manholes, catch-basins and junctions, and all other features necessary to a complete sewer system for said city, said system or plan to be made with reference to the possible installation at a later date of a treating plant or plants, * * *; also to furnish complete plans, specifications and detailed estimates of costs which will enable the city to select the material to be used in the construction of the sewer; and to furnish the attorney for the board all engineering data and details necessary in order that he may draw the ordinance calling for such im-

provement, including final estimate of cost; to furnish any information for and to appear at any meetings of the Board of Local Improvements or City Council of said city or public meetings of citizens which may be called to discuss and consider matters relative to said sewer system.

Appellant contracted that said sewer system and the plans and specifications thereof should comply with the laws of the State of Illinois and with all regulations of the State Board of Health and other public bodies having jurisdiction thereof, and that the approval of the State Board of Health to such plans and specifications would be secured before the same should be submitted to the city for final acceptance and approval. The city agreed to pay to the appellant for the performance of the work a sum equal to three per cent of the estimated cost of the new sewers and drains necessary to fit into the complete system * * *, it being understood and agreed between the parties that said engineer would so plan said system as to use all existing sewers where possible, and that the compensation of said engineer would not be based upon the cost or value of such existing sewers. Such compensation of said engineer was not to depend on the confirmation of the assessment roll of any court, and appellant promised to render all possible assistance free of cost to said city at all hearings in connection with said improvement. Article 8 of said agreement is as follows: "This agreement is made on the supposition that the City Council of said City of Streator will after May 1, 1919, ratify this agreement, and authorize the proper officers of said city to enter into a new agreement with said engineer on the same terms as herein contained, and provide for the carrying on of the work mentioned herein under the terms herein stated." On the first day of July, 1919, a supplementary agreement was entered into as provided for in said article 8, and among other things contains the following: "Now, therefore, the parties

hereto, the said engineer and the said City of Streator by its present Board of Local Improvements, hereby expressly ratify, approve and confirm the said contract of February 14, 1919, and in all respects adopt the same and all the terms and provisions therein contained as the contract of the parties hereto, and agree that the work mentioned in the said contract of February 14, 1919, shall be carried on under the terms, provisions and conditions therein contained and the provisions and conditions herein contained.'' No good purpose would be served in setting out in more detail the terms of the contracts.

On March 8, 1920, appellant rendered to the Board of Local Improvements of said city his bill for services for preparing plans, drawings and specifications for said sewer system. The Board of Local Improvements met and considered the bill of said appellant and adopted the following resolution: ''That whereas, the Board of Local Improvements of the City of Streator has completed the plans, estimates, specifications and designs of the sewer system designed by G. L. Clausen and having considered the acts of the State Board of Health of the State of Illinois approving said designs, and having inspected and considered the contract between the City of Streator and G. L. Clausen, dated July 1, 1919, for making plans, specifications and an estimate of costs of a sewer system for the City of Streator, and having considered the bill submitted by Mr. Clausen for the balance which he claims is due him, amounting to $31,263.00; and the members of the Board of Local Improvements being satisfied that the work of G. L. Clausen has been completed according to said contract as far as the work can proceed at this time and believing that Mr. Clausen is now entitled to his compensation. Now, therefore, be it resolved that we recommend payment of the compensation to G. L. Clausen according to the terms of said contract dated July 1, 1919, and that the matter be respectfully referred to the finance com-

mittee and the City Council of the City of Streator for action." The resolution was carried by the unanimous vote of the members of the Board of Local Improvements.

On April 19, 1920, the finance committee of said city, to whom was referred the bill of appellant, recommended that the bill of $31,263 due Clausen be approved and payment made as soon as could be legally done.

On May 1, 1920, $5,000 was appropriated and on May 17, 1920, a voucher was issued to appellant in the sum of $5,000 as a part payment for services in designing the new sewer system and said sum was paid. The record also discloses that $3,000 had been paid to appellant prior to the time of his submitting his report and claim in controversy. Before the payment of the remaining sum was made, appellees filed their bill of complaint herein. The original and subsequent contracts were set out in said bill and it is charged that the contracts and each of them were void, because no appropriation had been made covering the expense that would necessarily be occasioned in performing the terms of the contracts, entered into between the appellant and the City of Streator. Appellant answered the bill and on a hearing of the cause a decree was entered as hereinbefore stated and appellant, Clausen, prosecuted this appeal.

There is but little dispute about the facts in this case. It appears that the city had by ordinance provided that the fiscal year should begin on May 1 and end on April 30. The stipulation entered into between the respective parties includes all the council proceedings set up in the bill of complaint and the answer of appellant. It was stipulated that the population of the City of Streator in 1900 was 14,079; in 1910— 14,253; in 1920—14,779; that the official proceedings of the City Council for the years 1918, 1919, 1920 and 1921 were duly published in Streator Free Press, a newspaper of general circulation; that the city

changed from aldermanic to commission form of government in 1921, and at the time of filing of the bill of complaint the City of Streator was about to make further payment to appellant; that the assessed value of property in Streator in 1919 was $4,336,611, and for 1920, $4,444,762; that the only appropriations made were set out in the bill of complaint; that all the complainants excepting John Fedor were from December, 1919 to April, 1921, subscribers to either one or both of the daily papers published in the City of Streator.

The evidence of Essington and Lester former mayors of the City of Streator, and appellant, Clausen, discloses the fact that at the time of the entering into the contracts in question it was not known how much the cost of the projected sewer system would be. Appellant testified that due to the character of the work it was not possible to tell in advance its cost.

It is the contention of appellant that appellees are estopped from setting up alleged irregular exercises of statutory powers by the City of Streator after the services were fully performed by him. The bill of appellees proceeds upon the theory that since no appropriation or sufficient appropriation was made by the City Council of the City of Streator prior to the entering into of the contracts with the appellant of date February 14, 1919, and July 1, 1919, respectively, the contracts are illegal and void and no further payment can legally be made by the city for the services rendered by appellant or for services rendered in connection with said contracts. Reliance by appellees is placed upon section 4, art. 7, ch. 24, of the Revised Statutes [Cahill's Ill. St. ch. 24, ¶ 95], which provides generally that all appropriations for the fiscal year shall be included in the annual appropriation bill and that since no appropriation or sufficient appropriation was passed by the City of Streator covering the services to be rendered by appellant, a taxpayer may enjoin the city from paying for services rendered un-

der the contracts in question, notwithstanding the fact that appellant has rendered the service contracted by the city to be rendered. The record discloses the fact that at the time and prior to the entering into of the contracts in question the sewer system then in existence in the City of Streator was inadequate and wholly unsuited to the needs of the city. Owing to the condition of the sewer system it was a matter of great concern and it was for the purpose of remedying the conditions that the contracts in question were entered into. The question of sewage had received not only the careful consideration of the officials of the city, as is shown by its record set up in both the bill and answer, but the commercial association of said city had taken an active interest in the subject-matter. A special sewer committee had been appointed prior to the contract of February 14, 1919, and in conjunction with a committee appointed by the commercial association of said city had made a thorough investigation of the needs of the city as to the new sewer project. The conditions were such that they had received extensive publicity in the city. It is apparent that an emergency existed which warranted the city in taking such steps as it deemed advisable, as a safeguard to the health and welfare of its citizens, at the earliest possible moment.

The appellant, accepting the good faith of the city, proceeded to carry out the specific terms of the contract. His work was continued until the advent of the new administration at which time the "supplemental agreement" was entered into July 1, 1919. This agreement had attached to it the original contract of February 14, 1919, which was made a part of the supplemental agreement. It will be observed that no charge of fraud or collusion is made between any of the officials of the city, its Board of Local Improvements and appellant.

It will be kept in mind that the subject concerning which these contracts were made was a subject upon

which the city might legally and legitimately contract. The city had jurisdiction under the law of the subject-matter of the contract. By the terms of the contracts in question the sewer project was to follow definite and specific lines and was to be approved by the State Board of Health. Appellant carried out and fulfilled the terms of the contracts and from the advent of the new council performed the work under the contract of July 1, 1919, and rendered his bill for services accordingly. The City of Streator represented by its Board of Local Improvements approved the work of appellant, Clausen, and declared in official meeting that it had been performed in accordance with the terms of the contract and recommended to the City Council that it should be paid as agreed upon. The City Council approved the report of the Board of Local Improvements. The work was done to the satisfaction of the State Board of Health as well as that of the City of Streator.

At the time of the filing of the bill by appellees, said city was about to make further payment to appellant.

In view of the foregoing, we are of the opinion that the rule as announced in *Westbrook v. Middlecoff*, 99 Ill. App. 327, can be invoked. This was a bill filed to enjoin the payment of $922.86, out of the funds of the City of Paxton, to Middlecoff, in pursuance of a resolution of the City Council directing the city clerk to issue a warrant in favor of Middlecoff for said sum. A temporary injunction was granted and upon hearing was dissolved and bill dismissed. The facts in this case were that on July 3, 1889, the City Council passed its annual appropriation ordinance, and at the same time passed a resolution reciting the need of a city building suitable for council chambers and providing for a committee of three aldermen who, with the mayor, should make estimates of the costs of construction. Middlecoff was mayor. The committee reported the costs of building at about $4,000 and that

there were funds in the treasury received from the liquor licenses which could be used for that purpose. Report was adopted and the committee was authorized to advertise for bids. Bids were received and contract for the building made at $5,421.55. The city paid $4,500.59, leaving a balance of $920.86. Middlecoff furnished the balance and in April, 1900, the City Council passed a resolution reciting the indebtedness to Middlecoff by reason of the advancement and directed the city clerk to issue a warrant for that amount. It was to enjoin the issuance of this order and to prevent payment to Middlecoff that the bill was filed and temporary injunction allowed.

In deciding the *Middlecoff* case the court comments upon the fact that there was no charge in the bill of any fraud or extravagant expenditure of money and that from all appearances the building was worth what it cost. In this cause appellant's sole claim to injunction was that the annual appropriation ordinance of 1899 did not provide for the fund to pay for the building. Upon such a statement of facts, which in principle is very similar if not identical with the facts under consideration, the court at page 330 of said opinion said:

"The council was invested with the power to contract through a committee, just as was done. That is not disputed, but it is contended that no appropriation for the erection of the building by the annual appropriation ordinance of 1899 having been made, and no appropriation having been sanctioned by a majority of the legal voters of the city, either by petition or by vote at an election, the council was prohibited by the statute from entering into any contract creating any liability, or paying out any of the funds of the city for or on account of the construction of the building, and that the resolution directing the clerk to issue a warrant in favor of Middlecoff for the sum already paid out by him is void.

"While courts should maintain with vigor the limitations which the statute has placed upon corporate

De Kam v. City of Streator, 232 Ill. App. 135.

action, whenever it is a question of restraining a city council in advance from passing beyond the bounds of statutory requirement, they should, on the other hand, enforce against the city contracts of which it has received the benefit, if the subject-matter of the contract falls within the charter powers of the city. Where the statute authorizes a municipal corporation to exercise a certain power, but specifically regulates the mode in which it may be exercised, an attempt on the part of the municipal officers to override the regulations and exercise it in another manner will be restrained. But when the officers have so acted, and the municipality has received the benefits of a contract thus irregularly entered into, it is estopped from setting up the irregular exercise of the power when called upon to pay for what it has received. *City of East St. Louis v. East St. Louis Gas Light & Coke Co.*, 98 Ill. 415; *Badger v. Inlet Drainage Dist.*, 141 Ill. 540; *Bradley v. Ballard*, 55 Ill. 413; *First Nat. Bank of DuQuoin v. Keith*, 183 Ill. 475; *Village of Harvey v. Wilson*, 78 Ill. App. 544; Dillon's Municipal Corporations, sec. 444, etc.''

On page 331 of said opinion the court further said:

''If a city which has received the benefits of a contract, not ultra vires, is estopped from interposing a defense based upon the manner in which the contract was made, *individual taxpayers cannot*, by injunction, restrain the city from paying for or restoring the benefits. Appellants, citizens and taxpayers of the city, stood by and saw the erection of this public building. They knew the cost of its construction would have to be paid for out of the funds of the city. True, they have made affidavits to the effect that they had no actual knowledge of any of the resolutions or steps taken by the city council relative to the construction of the building and the appropriation of money for it until after it was erected; but the resolutions and proceedings were published in two local papers and a record of them was kept in the office of the city clerk, open to their inspection had they desired to see it. Had they exercised but a small fraction of the concern to inform themselves as to what steps the

council was taking in the direction of contracting for a city building that they have since exercised in an effort to defeat payment to a man public spirited enough to advance money for the completion of a building, they might have restrained the council from erecting it until after making a regular appropriation therefor.

"This is a suit in equity. In a court of equity the doctrine of estoppel finds its widest field, and when we take into consideration all the facts and circumstances of this case, the honest expenditure of the money, the benefits from it received by the city and the attitude of these appellants, there is, to our minds, presented an appropriate case for an application of the doctrine."

In *Mosiman Plumbing Co. v. Village of Pocahontas*, 199 Ill. App. 211, a suit in which the Village of Pocahontas owned and was operating a light plant for the lighting of its streets and it desired to build extensions thereto, the fiscal year of said village began on the third Tuesday of April of each year. In September, 1911, the board of trustees entered into an agreement with appellee company to construct said addition and extensions. Appellee did such work and furnished the material and completed the same before December 8, 1911. The reasonable value and price of the work, services and material rendered by appellee was $1,350. The trustees of the village accepted such work and used the plant from thence until the time of the institution of the suit. The village paid to the appellee $675 and delivered to him a note for the remainder, being for $675. The village passed no annual appropriation ordinance during the first quarter of the fiscal year 1911, and no appropriation subsequently thereto was made and paid on the note by the village. The village neglected and refused to make the payment and suit was instituted. The village contended that as there was no appropriation ordinance passed by the village board providing a fund for the lighting of the streets or the extension of

its improvements, the contract entered into and the note issued in pursuance thereof were void, and appellee was not entitled to recover anything for extending said plant according to the terms of the contract. The court in a decision of the case, at page 215, said:

"There can be no question, as we view it, but what the Village of Pocahontas had the power to provide for a lighting of its streets, and shall it be said that because this power was exercised in a manner different from that provided by statute that property and improvements thereby acquired shall be used and enjoyed by the village without paying reasonable compensation therefor? If this was an action to restrain the parties from carrying out an illegal contract, or an action by taxpayers to enjoin the prosecution of work, the question would be wholly different."

The court then approves the doctrine as announced in *Westbrook v. Middlecoff*, 99 Ill. App. 327, and the various authorities therein referred to, and quotes quite copiously from the *Middlecoff* case and sustains the jugment against the Village of Pocahontas. The *Middlecoff* case is quoted and cited as an authority in the case of *Coles County v. Goehring*, 209 Ill. 165, where the Supreme Court holds the County of Coles liable for the value of the courthouse, notwithstanding the warrants issued for the payment thereof were void as not conforming to the statute. Also in *Walker v. Vermilion County*, 143 Ill. App. 235-239, the *Middlecoff* case was followed and the court held since the engagement upon the part of the county was one which the county board had power to make and did make, and received the benefits thereof, it is in no position to set up a technical irregularity in the exercise of that power as against one with whom it has thus dealt. To the same effect is *Illinois Cent. R. Co. v. Alexander County Road Dist.*, 119 Ill. App. 251-254. The principles announced in the cases last above cited find support in the case of *Village of Harvey v. Wilson*, 78 Ill. App. 544.

Even though a contract that is executory cannot be upheld where it is entered into in any manner different from that provided by statute, this rule has no application where the contract has been executed and accepted, if the act done was within the power of the city. *City of East St. Louis v. East St. Louis Gas Light & Coke Co.*, 98 Ill. 415; *Mosiman Plumbing Co. v. Village of Pocahontas*, 199 Ill. App. 211-216.

This doctrine is manifestly fair and just and should, in our opinion, be applied in an action where the rights of a party are just and equitable as the rights of appellant appear to be from this record. Appellees have cited several cases some of which, upon first impression, would appear to hold that because these contracts were not entered into in the manner as approved by statute, no recovery could be had, but an examination of these cases shows that they were either seeking to recover upon a contract or were for the purpose of preventing the execution or carrying out of a contract illegally entered into. The case of *May v. City of Chicago*, 222 Ill. 595, referred to and relied upon by appellees, was a case where a collector had promised the regular employees, who were engaged at work upon a salary, extra compensation for extra work, but the court in that opinion says that they were obliged to do the extra work for the salary and that the collector was not authorized or did not have the power to pay them for the extra work.

In *Hope v. City of Alton*, 214 Ill. 102, cited and relied upon by appellees, the services had been performed in direct violation of the ordinance which created a legal department, and provided that the city should not be liable for the services of any other attorney, and the court there said that the contract was void for the reason the city council had no authority by any method or process to agree that the city should pay for legal services to be rendered by the plaintiff, who was neither city attorney nor corporation counsel.

*Litz v. Village of West Hammond,* 230 Ill. 310, relied upon by appellees for support of their contention, is a suit in which warrants had been issued but not paid, and the court was asked to restrain the carrying out of the contract, which had not been executed, and also asked the court to restore the lots in controversy to the contracting parties, and in that case the court distinguishes between cases where the contract has been pursued in an unlawful manner, and the parties can be placed *in statu quo,* and cases where the contract has been executed and the other parties are receiving the benefit.

We have no fault to find with the authorities relied upon by appellees. They have no application, however, where the contract has been executed and accepted and where the act done was within the power of the city as it was in the case under consideration. Appellees state that so far as this case is concerned it makes little difference what the opinion of the court may be as to whether or not the city would be estopped, by receiving the benefits, from setting up the illegality of the contract. This they say, "is a suit by taxpayers and the question in this case is, would a taxpayer be estopped?" After an examination of the authorities cited by appellees where suits were instituted by a taxpayer, namely, *Litz v. Village of West Hammond, supra,* and the case of *Meehan v. Parsons,* 194 Ill. App. 131, it is not difficult to understand that the bill could be maintained in such cases by a taxpayer. In the case against the *Village of West Hammond,* the village had purchased certain real estate and issued warrants for the payment of the same without any provision for so doing having been included in the annual appropriation bill passed during the first quarter of the fiscal year in which the warrants were issued, the collection of which were sought to be enjoined. The warrants were still in the hands of the one from whom the real estate was purchased and had not been paid and of course the bill would lie

by a taxpayer under such a state of facts.

The *Meehan-Parsons* case was a bill filed by certain taxpayers of the City of Cairo to enjoin said city from the payment of a bill of expenses occasioned by Parsons, while attending on the Congress in the City of Washington to lobby for and obtain if possible an appropriation of government money to be used for levees and embankments in and about the City of Cairo, and it only requires a reading of the facts in that case to show that the rule announced therein could have no application in the case before us for decision. The court held the agreement of a city to reimburse its mayor for expenses incurred by him on a successful voluntary trip to lobby before Congress for an appropriation for the repair of city levees damaged by a flood is against public policy and void.

We are not unmindful of the fact a number of Illinois cases can be found which deal with the question of the necessity of antecedent appropriation ordinances. It will be found the rule is that when the courts of this State have declared a contract to be void because of the lack of such appropriation ordinance, the suit did not involve the payment for services wholly rendered but was to prevent the rendition of such services and the consequent payment therefor. In conclusion, this is peculiarly a case in which the doctrine of estoppel can be invoked. It will be neither equitable nor just to allow appellees, who were cognizant, from what is disclosed in this record of the work done and services rendered by appellant, and which work had met with approval of the city authorities and of the State Board of Health, to defeat the payment of the bill in question when the city authorities recognized the justness of the same and would have paid it had it not been for the institution of this proceeding.

When the conditions with which the people and citizens of Streator were confronted are kept in mind

De Kam v. City of Streator, 232 Ill. App. 135.

and the urgent necessity for immediate action is duly considered, the equities of the situation are certainly in favor of appellant, who in good faith rendered the services for the municipality. No one insists that the services were not worth the amount claimed by appellant. On the other hand, appellant testified the services rendered were reasonably worth the sum charged. We are clearly of the opinion that under the state of facts as disclosed in this record, appellant is entitled to recover for what his services were reasonably worth and if they were worth the contract price he should be paid the contract price.

In the bill it is charged that the sewer as projected was impractical and otherwise wholly useless. This allegation is made after the approval of the project by the Board of Local Improvements, the City Council of the City of Streator and the State Board of Health of the State of Illinois. The chancellor refused to permit any proof upon this phase of the bill, and we think properly so. We therefore conclude that the decree of the circuit court of La Salle county should be reversed and the cause remanded, which is accordingly done.

*Reversed and remanded.*